# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 06-2060

LINDSEY ROSS, by and through her parents and
next friends, MICHAEL and DIANE ROSS,

*Plaintiffs-Appellants*,

*v.*

BOARD OF EDUCATION OF TOWNSHIP HIGH SCHOOL
DISTRICT 211, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 6111—**Paul E. Plunkett**, *Judge.*

ARGUED JANUARY 3, 2007—DECIDED MAY 11, 2007

Before EASTERBROOK, *Chief Judge,* and WOOD and
WILLIAMS, *Circuit Judges.*

WOOD, *Circuit Judge.* In this case, as in its companion
*Board of Education of Township High School District 211
v. Ross*, No. 05-3700 ("*Ross I*"), decided today, Lindsey
Ross and her parents ask us to consider Lindsey's claim
that Township High School District 211 violated her rights
in various ways during her high school years. Lindsey,
who is afflicted with Rett syndrome, a neurodevelop-
mental disorder that strikes girls almost exclusively,
claims here through her parents that she is not bound by

a settlement agreement that her parents signed on her behalf when she was a minor. If she were freed from the strictures of that agreement, which figures in *Ross I*, she believes that she would be entitled now to assert claims against the District and Dr. Daniel E. Cates, the District's Director of Special Education, under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132; section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and the Civil Rights Act, 42 U.S.C. § 1983. She has also raised state law claims against Dr. Bennett L. Leventhal, an outside expert who participated in her treatment plan, for medical malpractice, battery, and violation of the Illinois Mental Health and Disabilities Code, 405 ILCS 5/2-107.

Lindsey's current effort foundered at the outset when the district court found that, settlement or no settlement, the new set of claims against the District and Dr. Cates was barred under the doctrine of claim preclusion. After dismissing the federal claims, the district court elected to dismiss the state supplemental claims without prejudice. See 28 U.S.C. § 1367(c)(3). Lindsey has appealed, claiming that she is not bound by anything that occurred in *Ross I*, and thus that her new claims cannot be barred. We conclude, to the contrary, that her current claims could and should have been brought in the first action and that nothing about the settlement agreement changes that fact. We therefore affirm the district court's judgment dismissing her federal claims with prejudice and her state claims without prejudice.

**I**

We limit our discussion of the facts to those that are important to Lindsey's ability to pursue the present case. A more detailed account of her experience in District 211's Conant High School appears in *Ross I*. The earlier case centered on the question whether District 211 had fulfilled

its obligation under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1414, to provide Lindsey with a free and appropriate public education in the least restrictive environment. It reached the district court when, on August 27, 2002, District 211 filed a complaint seeking to enjoin Lindsey's parents from invoking the "stay put" provision of the IDEA, under which the District would have been required to keep Lindsey in her current placement while the school and the parents resolved differences of opinion about the optimal placement for her. See 20 U.S.C. § 1415(j); *Rodiriecus L. v. Waukegan Sch. Dist. No. 60*, 90 F.3d 249, 252 (7th Cir. 1996). Negotiations between Lindsey's parents and the District were at least temporarily successful, insofar as they resulted in the settlement agreement at issue in the present case on November 5, 2002. The parties to the agreement were the District and "Michael and Diane Ross, on their own behalf and on behalf of Lindsey Ross."

In that agreement, the Rosses agreed, among other things, to

> fully and forever release and discharge the School District and its Board members, employees and agents from any and all claims . . . which have or may have arisen as a result of the past actions or inactions of the School District, its current and former Board members, employees and/or agents . . . including those arising under the IDEA[,] . . . Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, their respective implementing regulations, and 42 U.S.C. § 1983, up through and including the effective date of this Agreement.

In exchange, the District promised to use its resources and work with an expert panel to create a plan to help Lindsey return to Conant. Unfortunately, her return was

ultimately unsuccessful, and after a final meeting that included Lindsey's parents, members of the expert panel, and her "individualized educational plan" or IEP team on November 5, 2003, the District returned to the court with another emergency petition to block "stay put" relief.

At that point, Lindsey filed an answer and a counterclaim against the District; the counterclaim detailed a number of ways in which the District had allegedly failed to meet its obligations under the IDEA. After a year in which an administrative hearing took place, the result of which was to uphold the District's placement decision, Lindsey filed a First Amended Cross-Complaint [*sic*] against District 211. The new pleading (which, because it was against an opposing party, should have been labeled a counterclaim, see FED. R. CIV. P. 13(a), (b), rather than a cross-claim, see FED. R. CIV. P. 13(g)) challenged the state hearing officer's decision and added new claims against District 211 under the IDEA, the ADA, and section 504 of the Rehabilitation Act. The district court granted summary judgment in favor of District 211, a ruling that we affirm today in *Ross I*.

Approximately a month after she filed her notice of appeal in *Ross I*, Lindsey filed the present suit against District 211 and Dr. Cates. This time she relied exclusively on the ADA, the Rehabilitation Act, and the Civil Rights Act as the theories under which she asserted a right to recover. The district court held that her new action was barred by res judicata, or claim preclusion, because her claims arise out of the same basic events as those underlying the first suit. Insisting that the court should have relieved her of the broad release contained in the November 2002 settlement agreement (because at this point she is no longer a minor), that she has a right to relitigate many of the issues resolved in *Ross I*, and that some of her claims involve matters that occurred after the settlement agreement was signed, Lindsey asks this court to reverse.

## II

The similarities between *Ross I* and the present case are striking enough that the common-sense question arises why a second lawsuit should be permitted after the first one apparently resolved the dispute between the parties. The common-sense response that it ordinarily should not be goes more formally by the name of claim preclusion or res judicata. In *Montana v. United States*, the Supreme Court described the doctrine concisely as follows:

> A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a "right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies . . . ." *Southern Pacific R. Co. v. United States*, 168 U.S. 1, 48-49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897). Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. *Cromwell v. County of Sac*, 94 U.S. 351, 352, 24 L.Ed. 195 (1877); *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955); 1B J. Moore, Federal Practice ¶ 0.405[1], pp. 621-624 (2d ed. 1974) . . . ; RESTATEMENT (SECOND) OF JUDGMENTS § 47 (Tent. Draft No. 1, Mar. 28, 1973) (merger); *id.*, § 48 (bar).

440 U.S. 147, 153 (1979). This court has identified three requirements that a party asserting claim preclusion must satisfy: (1) identity of the claim, (2) identity of parties, which includes those in "privity" with the original parties, and (3) a final judgment on the merits. See *Perry v. Globe Auto Recycling, Inc.*, 227 F.3d 950, 952 (7th Cir. 2000); *Roboserve, Inc. v. Kato Kagaku Co.*, 121 F.3d 1027, 1034 (7th Cir. 1997).

The federal law of claim preclusion applies here because the earlier judgment was rendered by a federal court. See *Schor v. Abbott Labs.*, 457 F.3d 608, 615 (7th Cir. 2006); *Barnett v. Stern*, 909 F.2d 973, 977 (7th Cir. 1990); RESTATEMENT (SECOND) OF JUDGMENTS § 87 (1982). In order to decide whether the two cases involve the same claim, we ask whether they arise out of the same transaction. If they did, whether or not they were actually raised in the earlier lawsuit, they may not be asserted in the second or subsequent proceeding. It is critical, therefore, to define what falls within the single transaction or litigation unit encompassed by the first case. We took a functional approach to that task in *Perkins v. Board of Trustees of University of Illinois*:

> What is a single transaction? The usual answer— "common core of operative fact," see *Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589, 593 (7th Cir. 1986)—poses questions of its own. Because the function of res judicata is to require the joinder of all legal challenges to a wrong, and all claims for relief arising out of those events, without compelling the joinder of claims arising from separate wrongs, we concluded in *Herrmann v. Cencom Cable Associates, Inc.*, 999 F.2d 223, 226 (7th Cir. 1993), that claims "based on the same, or nearly the same, factual allegations" must be joined. . . . But if the supposedly wrongful events are separated by time and function, multiple suits are permissible (even though not desirable).

116 F.3d 235, 236-37 (7th Cir. 1997). As the district court correctly observed, both of Lindsey's lawsuits deal with District 211's placement decisions, the services it offered her, and its response to her disability. The fact that the suits differ in some respects, including the legal theories that Lindsey is advancing and some of the facts she

intends to use to prove her right to relief, is not enough to defeat a finding that these cases rely on the same fundamental transaction or series of transactions. Thus, even though the IDEA claim focuses on the type of educational plan the District developed for her and the extent to which it was prepared to leave her with the general student population, and the ADA and Rehabilitation Act claims assert out-and-out discrimination based on her disability, the underlying allegedly wrongful events are the same.

A comparison of the allegations in the complaint in the present case and in Lindsey's "First Amended Cross-Complaint" in *Ross I* erases any doubt that one might have about the identity of the transactions underlying these two lawsuits. Lindsey argues here that the settlement agreement prevented her parents from litigating any matters that arose "pre-settlement," but it is plain that they (for themselves and on behalf of Lindsey) were effectively doing just that in their challenge to the conclusion reached by the state hearing officer, and also that they raised every claim about the post-settlement period that Lindsey's current complaint sets forth against the District and Dr. Cates. (We discuss her new complaint against Dr. Leventhal later.) Moreover, the time at which claim identity must be assessed is at the outset of a lawsuit. The fact that a party may have chosen to settle some or all of its claim later on says nothing about which potential claims fell within the same transaction that gave rise to the suit or which additional theories could have been asserted.

It is worth recalling, in this connection, that Lindsey filed a counterclaim raising ADA and Rehabilitation Act claims in the first suit. That was a wise decision, given the language of FED. R. CIV. P. 13(a), which makes compulsory all counterclaims that arise "out of the transaction or occurrence that is the subject matter of the opposing

party's claim . . . ." Again, these counterclaims are "compulsory" only in the sense that a failure to include them in the suit means that they are thereafter barred. See *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974); 6 Wright, Miller & Kane, Federal Practice and Procedure § 1417 (2d ed. 1990). Just as for the "same claim" requirement of claim preclusion, there is no formalistic test for determining whether suits arise out of the same transaction or occurrence. Instead, we have held that courts "should consider the totality of the claims, including the nature of the claims, the legal basis for recovery, the law involved, and the respective factual backgrounds." *Burlington Northern R. Co. v. Strong*, 907 F.2d 707, 711 (7th Cir. 1990). Taking that approach, we have no trouble finding that the claims Lindsey is now trying to assert were compulsory counterclaims in the original suit. Although the settlement agreement was reached in November 2002, the litigation went on long after that. Lindsey's own amended answer was filed after the November 2003 break-down between the parties.

The third element of claim preclusion requires a final judgment on the merits in the first case. The district court issued its final judgment in *Ross I* on August 15, 2005; Lindsey, through her parents, commenced this case on October 21, 2005, a little more than a month after she filed her notice of appeal in *Ross I*. There is no question that the district court's *Ross I* decision was a final judgment for purposes of 28 U.S.C. § 1291. This is normally enough to assure finality for preclusion purposes also. In particular, the fact that an appeal was lodged does not defeat the finality of the judgment. See 18A Wright, Miller & Cooper, Federal Practice and Procedure § 4433 at 78-79 & n.11 (2d ed. 2002) (citing *Deposit Bank v. Frankfort*, 191 U.S. 499 (1903)). As the Supreme Court said in *Federated Department Stores, Inc. v. Moitie*, "A judgment merely voidable because based upon an erroneous view of the

law is not open to collateral attack, but can be corrected only by a direct review and not by bringing another action upon the same cause [of action]." 452 U.S. 394, 398 (1981) (quoting *Baltimore S.S. Co. v. Phillips*, 274 U.S. 316, 325 (1927)).

The element of claim preclusion that Lindsey contests most vigorously, at least implicitly, is the identity of party requirement. In her view, *Ross I* was brought by her parents during the time when she was a minor. (She turned 18 years old in October 2004.) Her parents, she continues, were under a special obligation when they entered into the settlement agreement, and their decisions could not bind her beyond her minority without an independent decision by the court ensuring that the agreement fairly promoted her interests. As support for that proposition, they cite *Dacanay v. Mendoza*, 573 F.2d 1075, 1079 (9th Cir. 1978), as well as *Evans ex rel. Husted v. General Motors Corp.*, 732 N.E.2d 79, 87 (Ill. App. Ct. 2000) (setting forth state law—not binding for federal claim preclusion—on the subject).

If circumstances in this case were different, and Lindsey had been represented by her parents earlier solely because of her minority and she were now proceeding independently, we would need to explore this question more thoroughly. Because of her disability, however, the fact is that the parties to the present case (excluding, once again, Dr. Leventhal) and the earlier case are literally identical. In *Ross I,* the defendants and cross claimant were initially named as "Michael R. and Diane R., individually and as next friends of Lindsey R., a minor." In the present case, the plaintiff-appellant is described as "Lindsey Ross, by and through her parents and next friends, Michael and Diane Ross." Unfortunately, because of her disability Lindsey is no more able to proceed independently now than she was prior to the time she reached the age of majority. There is nothing in this rec-

ord to suggest that her parents have not, throughout these proceedings, faithfully and firmly represented her interests. We therefore conclude that this element of claim preclusion is also satisfied, and thus that the district court correctly ruled that the present case, insofar as it involves claims between Lindsey, on the one hand, and District 211 and Dr. Cates, on the other, is barred by the earlier litigation.

## III

That leaves only Lindsey's complaint against Dr. Leventhal, who was an expert from the University of Chicago who became involved at one point in evaluating Lindsey's abilities and recommending a proper placement for her. See *Ross I.* The district court correctly observed that Lindsey asserts only state-law claims against Dr. Leventhal, using theories of medical malpractice, battery, and violations of the Illinois Mental Health Code, 405 ILCS 5/2-107. After the district court decided that Lindsey's federal claims had to be dismissed on claim preclusion grounds, it exercised its discretion to dismiss without prejudice the state-law claims against Dr. Leventhal. Those claims depended upon the court's supplemental jurisdiction, see 28 U.S.C. § 1367, and the statute permits a court to dismiss such claims if "the district court has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). We review the court's decision to relinquish jurisdiction under an abuse of discretion standard. See *Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 906 (7th Cir. 2007). Lindsey offers no reason why we should find such an abuse here, especially given the fact that her federal claims were dismissed at such an early stage on a purely legal ground.

\*   \*   \*

While we understand that Lindsey's parents feel strongly that District 211 and its officials did not handle her education properly, and indeed that they engaged in prohibited discrimination against her based on her disability, this does not entitle them to multiple opportunities to present these claims in court. Our opinion in *Ross I* concludes that the District did not run afoul of any law presented in that action. The present case, apart from the part Dr. Leventhal plays in it, is functionally the same as the earlier round of litigation. For that reason, the district court properly dismissed it under the doctrine of claim preclusion. As for Dr. Leventhal, nothing that occurred in the district court or this court prevents her parents from pursuing whatever state remedies may be available to them against him at this point.

The judgment of the district court is AFFIRMED.

A true Copy:

        Teste:

                                _____
                                *Clerk of the United States Court of*
                                *Appeals for the Seventh Circuit*