**NOT RECOMMENDED FOR PUBLICATION**
File Name: 12a0821n.06

**No. 11-3981**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Jul 31, 2012*

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| NICOLE A. TORRES, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| COMMISSIONER OF SOCIAL SECURITY, | ) | THE SOUTHERN DISTRICT OF |
| | ) | OHIO |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |
| | ) | |

Before:  SILER and MOORE, Circuit Judges; VAN TATENHOVE, District Judge.[*]

**SILER**, Circuit Judge.  Nicole Torres challenges the final decision of an administrative law judge ("ALJ") denying her application for disability insurance benefits based on fibromyalgia, lupus, and other impairments.  The district court affirmed, concluding that the ALJ's decision was supported by substantial evidence in the record.  Because the ALJ applied correct legal standards and reached a decision supported by substantial evidence, we **AFFIRM** the judgment of the district court.

**I.**

Torres has previously worked as a cashier, office clerk, secretary, receptionist, administrative assistant, and a telephone operator for various employers since 1988.  She claims that she suffers

---

[*]     The Honorable Gregory F. Van Tatenhove, United States District Judge for the Eastern District of Kentucky, sitting by designation.

from several severe impairments that have prevented her from engaging in substantial gainful employment since 2001.

### A. Medical History from Onset of Disability to Date Last Insured

Torres has seen a number of physicians regarding her impairments since 2001. Dr. Vivian Perez-McArthur, an osteopathic physician, treated Torres on a regular basis from 2002 to 2004. Dr. McArthur diagnosed Torres with depression, generally confirmed the symptoms of lupus and fibromyalgia, and prescribed numerous medications including Paxil for depression and Plaquenil for lupus.

Dr. Jennifer M. Richardson, a rheumatologist, indicated that she treated Torres from 2001 to 2004.[1] Over the course of treatment, Dr. Richardson continuously noted symptoms consistent with lupus and fibromyalgia, as well as fatigue, depression, poor sleep, mouth and head sores, and "pain all over." Her general course of treatment was to continue Plaquenil, but eventually switched Torres over to steroids. By March 2005, Dr. Richardson opined that Torres's lupus was "not active" and continued the general plan of treatment. By the end of the year Dr. Richardson indicated that Torres "was actually doing well lately."

In 2005, Dr. John C. Khol, a chiropractor, treated Torres for back, hip, neck pain, and headaches. Dr. Khol indicated that Torres self-reported a "60% overall symptomatic improvement" after treatment. His recommended treatment plan included chiropractic manipulation, therapy, exercise, massage, modification of daily activities, and home management.

---

[1] Torres herself indicates that she first saw Dr. Richardson in 2002. The record contains Dr. Richardson's progress notes starting only in 2003.

In 2004, Dr. David H. Weaver, a consulting psychologist, conducted a psychological disability assessment report on Torres. He concluded Torres's "mood disorder may worsen her chronic medical conditions" and she "shows great introversion, anxiety, and trauma signs." Ultimately, Dr. Weaver found that her ability to understand, remember, and follow instructions did not seem impaired. But her ability to maintain attention, pace, and persistence seemed moderately impaired. Thus, he opined that Torres's "ability to withstand the stress and pressure of day-to-day work seems moderately to markedly impaired." Also in 2004, Dr. Steven J. Meyer, a state agency psychologist conducted a psychiatric review and residual functional capacity ("RFC") assessment on Torres. Dr. Meyer opined that Dr. Weaver's "conclusions are somewhat more limiting than noted in [the] body of [his] exam or [] other sources." Dr. Meyer found Torres to be "[c]apable of routine work, that [she] is motivated to perform, in settings with occasional intermittent interactions with others and few changes."

Torres's insured status expired on June 30, 2005, when she was 35 years old.

### B. Medical History Post-Date Last Insured

Torres continued to see Dr. Richardson in 2006 for follow-ups, and Torres requested Dr. Richardson's opinion on filing for disability. A handwritten response reads, "I would not encourage it. [A]nd it can [illegible]." By July 2006, Dr. Richardson again noted that Torres "ha[d] been doing well lately" and her blood work was "fairly normal." Despite complaining of "a lot of pain in her back," Torres's condition was improving overall and she was working out at "Curves."

In January 2007, Dr. Kevin V. Hackshaw, a rheumatologist, examined Torres for the first time. He generally confirmed Dr. Richardson's findings and Torres's history of illness related to lupus and fibromyalgia. However, his general impression was that "if [Torres] is looking for part-

time work and [Family and Medical Leave Act ("FMLA")] is allowed, then she should be able to at least hold some part-time position." In September 2007, Torres complained that her symptoms were getting worse, but she was not taking her prescribed medication. Dr. Hackshaw noted "18/18 tender point sites, consistent with fibromyalgia," and prescribed Lyrica and Darvocet. From 2007 to 2008, Torres saw Dr. Mary Grulkowski, a family practice physician, who confirmed that Torres was diagnosed with fibromyalgia in April 2002 and was incapacitated from this chronic condition twice a month for two to three days at a time.

In January 2008, Dr. Herbert A. Grodner, a consulting physician, examined Torres for a disability evaluation. He noted that Torres was diagnosed with systemic lupus and fibromyalgia but had not been taking her prescribed Plaquenil. Dr. Grodner concluded that Torres would have problems with repetitive weight bearing and repetitive activity in a sedentary position. However, he did state that she could perform some sedentary activity or light intermittent activity if she was in an ergonomically optimal position. He also stated that Torres could sit, stand, and walk thirty minutes without interruption, sit and stand for four hours each in an eight hour work day, and walk for two hours in an eight hour work day. Ultimately, Dr. Grodner opined that Torres "could perform short intervals of a variety of activities, but these would depend on how sustained these activities were and also how repetitive they were as well as the time from which she was performing [them]."

In February 2008, Dr. Margaret G. Smith, a consulting psychologist, concluded that Torres's depression and anxiety may: mildly to moderately impair her ability to relate to others; moderately impair her ability to understand and follow instructions; moderately to markedly impair her ability to maintain attention, concentration, persistence and pace to perform routine tasks; and moderately to markedly impair her ability to withstand stress and pressures associated with day-to-day work.

## C.    *Procedural Background*

Upon Torres's application for disability insurance benefits in 2001, ALJ Paul R. Armstrong ruled that Torres was not entitled to disability insurance benefits. The SSA Appeals Council vacated the hearing decision and remanded the case.

On remand, the ALJ conducted a more thorough review of the evidence but concluded that Torres was not "under a 'disability,' as defined in the Social Security Act, at any time from April 1, 2001, the alleged onset date, through June 30, 2005, the date last insured []." The ALJ found that Torres had "severe impairments" of lupus, fibromyalgia, irritable bowel syndrome, depression, and anxiety. However, the ALJ found that the impairments did not reach the level of severity contemplated by 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526. At the hearing, Dr. Ashok Jilhewal, a medical expert, testified that Torres "retained the [RFC] to perform sedentary activity" as defined in 20 C.F.R. § 404.1567(a) with limitations. Susan Etenberg, a vocational expert, also testified at the hearing stating that "[Torres] retained the [RFC] to perform simple unskilled sedentary work." Ultimately the ALJ held that although Torres was unable to perform her past relevant work, she still had the RFC to perform sedentary work. Thus, Torres was not disabled within the meaning of the Social Security Act. The SSA Appeals Council denied her appeal.

Torres sought review of the Commissioner's final decision in federal district court, and the magistrate judge entered a Report and Recommendation ("Report") that the ALJ be reversed and the case be remanded for an award of benefits. However, the district court declined to follow the Report, holding that "the Commissioner's final decision [was] supported by substantial evidence in the record as a whole and must be affirmed."

## II.

Torres argues that the district court erred when it conducted a full *de novo* review of the Report even though the Commissioner only filed specific objections to the remedy recommended by the magistrate judge (i.e. reversal for an award of benefits rather than a remand). While Torres is correct that the Commissioner only objected to the remedy, her argument lacks merit.

We require that "a party . . . file objections [to the magistrate judge's report] with the district court or else waive right to appeal." *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). In *Thomas v. Arn*, 474 U.S. 140 (1985), the Supreme Court found this waiver rule constitutional, holding "that a court of appeals may adopt a rule conditioning appeal, when taken from a district court judgment that adopts a magistrate's recommendation, upon the filing of objections with the district court identifying those issues on which further review is desired." *Id.* at 155.

Although a district judge is not required to review an issue *de novo* if no objections are filed, *Arn* makes clear that nothing "preclude[s] further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard." *Id.* at 154. Therefore, the district court did not err in conducting a full *de novo* review in this case.

## III.

A district court's decision in a disability case is reviewed *de novo*. *Valley v. Comm'r of Soc. Sec.*, 427 F.3d 388, 390 (6th Cir. 2005). The Commissioner's conclusions will be upheld absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).

In analyzing Torres's disability claim, the ALJ followed the five-step sequential evaluation process described in 20 C.F.R. § 416.920. Torres argues that the ALJ improperly accorded less weight to her treating physicians, improperly relied on objective medical evidence and discounted her subjective complaints in evaluating fibromyalgia, and erred in his credibility determination.

### A.    The ALJ adequately weighed the opinions of the medical experts

In evaluating Torres's claim and settling on the RFC and disability determinations, the ALJ accorded "substantial weight" to the opinions of Dr. Jilhewal, a nonexamining source, "some weight" to the opinions of Drs. Smith and Grodner, examining sources, and "less weight" to Drs. Richardson and Hackshaw, Torres's treating physicians.[2]

An ALJ will generally "give more weight to opinions from . . . treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)." 20 C.F.R. § 404.1527(c)(2). An ALJ is required to "give good reasons in [the] notice of determination or decision for the weight [given to] treating source's opinions." *Id.*

The ALJ explicitly accorded less weight to Drs. Richardson and Hackshaw, Torres's supposed treating physicians, than to other examining and non-examining sources. He discussed the

_____

[2] The government correctly argues that Dr. Hackshaw's 2007 opinion should not qualify for any special consideration. Although Dr. Hackshaw may have become Torres's treating physician at a later time, his 2007 opinion was given after the very first meeting with Torres. As one visit is insufficient to establish a treating relationship, Dr. Hackshaw's 2007 opinion should not be considered a treating source's opinion. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 506 (6th Cir. 2006) ("The question is whether [the physician] had the ongoing relationship with [the claimant] to qualify as a treating physician *at the time he rendered his opinion*." (emphasis in original)). Because the ALJ considered Dr. Hackshaw to be a treating source, however, and because the ALJ's decision is supported by substantial evidence regardless of Dr. Hackshaw's categorization, we assume for the sake of argument that Dr. Hackshaw can be considered a treating physician.

opinions of the medical sources and the weight afforded those opinions over four pages in his decision. He briefly discussed the opinions of the treating physicians, focusing on the fact that, according to the ALJ, they both "considered the claimant able to hold at least a part-time position." The discussion of the treating physicians' opinions concludes with the following explanation: "The record does not, however, include any opinion from Dr. Hackshaw or Dr. Richardson of what functions the claimant would or would not be able to perform that provide the underlying basis for their opinions. Therefore, their opinions are accorded less weight."

The reasons-giving requirement requires the ALJ to actually state his reasons for discounting treating sources' opinions. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875-76 (6th Cir. 2007). While the ALJ's explanation is short and somewhat lacking in specificity and thoroughness, in this case it complied with the reasons-giving requirement.

Moreover, the ALJ's decision to afford less weight to Drs. Richardson and Hackshaw is supported by substantial evidence. As the ALJ explained in the short statement, the treating physicians' opinions expressed very little about Torres's actual functional capacity. The record includes many progress reports noting her subjective complaints, ordering medication or more tests, and recommending exercise or other treatment options, but these opinions do not necessarily speak to her functional capacity. In fact, it seems the ALJ gave substantial weight to much of this evidence from the treating sources because the ALJ agreed with the treating physicians as to their diagnoses of Torres and the existence of several severe impairments.

The vast majority of the opinions expressed by both treating and examining sources is consistent with the RFC determination. Torres focuses on Dr. Hackshaw's opinion that "if [Torres] is looking for part-time work and [FMLA] is allowed, then she should be able to at least hold some

part-time position." This opinion is not necessarily inconsistent with the ALJ's final determination–under one reading of this statement, Dr. Hackshaw is simply pointing out Torres's minimum capacity rather than her ceiling (she can *at least* do part-time work and perhaps full-time).

For these reasons, the ALJ's decision is consistent with the majority of the physician opinions, and the determination regarding the weight to be given to each opinion is supported by substantial evidence.

### B.      The ALJ's RFC determination is supported by substantial evidence

Torres argues that the ALJ erred in placing too much importance on objective medical evidence in making the disability determination because fibromyalgia does not lend itself to objective measurement. Torres points to *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243-44 (6th Cir. 2007), for the proposition that, "unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs."

The ALJ's decision in this case did not run afoul of the principles regarding objective evidence of fibromyalgia that were expressed in *Rogers*. In *Rogers*, the court held that the ALJ erred in failing to find the claimant's fibromyalgia to be a severe impairment. *Id.* at 245-46. The court explained that, "in light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not particularly relevant" to the disability determination. *Id.* Torres's argument, however, ignores an important distinction between, on one hand, diagnosing fibromyalgia and finding it to be a severe impairment and, on the other, assessing a claimant's physical limitations due to the impairment. The ALJ relied on Torres's subjective complaints and the opinions of her treating physicians in finding her fibromyalgia to be a severe impairment. However, "a *diagnosis* of fibromyalgia does not

automatically entitle [Torres] to disability benefits." *See Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) (emphasis in original) (citing *Sarchet v. Chater*, 78 F.3d 305 (7th Cir. 1996), for the proposition that "[s]ome people may have a severe case of fibromyalgia as to be totally disabled from working . . . but most do not and the question is whether [claimant] is one of the minority.").

Substantial evidence supports the ALJ's RFC and disability determinations. As explained above, the RFC and the limitations imposed are consistent with the majority of the opinions expressed by both treating and examining sources. Torres periodically suffered pain and fatigue but her symptoms often improved with medication and treatment.

The ALJ relied on Torres's ability to perform "activities of daily living" and other actions in evaluating her functional capacity. The ALJ also examined the evidence from mental health experts and included in the RFC a limitation that Torres perform only simple, unskilled work. Along with Dr. Jilhewal's testimony that Torres could perform sedentary work consistent with the limitations expressed in the RFC, the record contains "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" that Torres is not disabled. *See White*, 572 F.3d at 281 (quoting *Richardson*, 402 U.S. at 401). While the record contains conflicting evidence that would suggest further limitations, under the substantial evidence standard, "administrative findings 'are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.'" *Id.* at 281 (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1996)).

### C. *The ALJ's credibility determination is supported by substantial evidence*

Torres additionally argues that the ALJ erred in finding Torres incredible with regard to the severity and frequency of her impairments and limitations. In making a disability determination, the

ALJ is required to "consider all [the claimant's] symptoms, including pain, and the extent to which [the] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529. "Credibility determinations with respect to subjective complaints of pain rest with the ALJ," *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (internal quotation marks and alterations omitted), and "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility," *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). After explaining that Torres testified that her impairments were severe and precluded her from competitive employment, the ALJ concluded that "[Torres's] subjective allegations are not entirely supported by the totality of the medical evidence."

The ALJ's conclusion is supported by substantial evidence. Torres's testimony regarding her severe and debilitating pain could reasonably be considered inconsistent with the testimony of certain physicians, including Dr. Jilhewal, who reviewed the entire record and testified that Torres could perform full-time work with certain limitations. More importantly, Torres's allegations of impairments could be considered inconsistent with her own testimony about the daily activities she is able to perform. These inconsistencies provide substantial evidence for the ALJ's determination that Torres was not completely credible.

**AFFIRMED.**