In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-1162

UNITED STATES OF AMERICA *ex rel*. KENNETH J. CONNER,

*Plaintiff-Appellant*,

*v.*

AMRISH K. MAHAJAN, *et al*.,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11-CV-4458 — **Sharon Johnson Coleman**, *Judge*.

ARGUED JULY 6, 2017 — DECIDED DECEMBER 5, 2017

Before POSNER, KANNE, and SYKES, *Circuit Judges*.[*]

PER CURIAM. After losing his job at Mutual Bank, Kenneth Conner brought this qui tam action claiming that the defendants, most of them directors or officers of the bank, had defrauded the government in violation of the False Claims

---

[*] Circuit Judge Posner retired on September 2, 2017, and did not participate in the decision of this case, which is being resolved by a quorum of the panel under 28 U.S.C. § 46(d).

Act, 31 U.S.C. §§ 3729–3733. The United States declined to
take over the qui tam action, which Conner eventually settled.
But the Federal Deposit Insurance Corporation filed its own
lawsuit against many of the same defendants. That case also
settled, and Conner thinks he is entitled to a share of the set-
tlement proceeds the FDIC received from the defendants. To
that end Conner tried to intervene in the FDIC's case, and after
being rebuffed he filed a motion in this action demanding part
of the FDIC's recovery. The district court denied that request
on the ground that, because Conner's attempt to intervene in
the FDIC's case was rejected, he is barred by the doctrine of
issue preclusion from litigating in this suit the question
whether he has a cognizable interest in the settlement pro-
ceeds. Conner challenges that ruling in this appeal. We agree
with the district court's bottom line but conclude that claim
preclusion, rather than issue preclusion, explains this out-
come.

## I. BACKGROUND

The False Claims Act imposes civil liability on individuals
who knowingly defraud the United States. *Universal Health
Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 1995
(2016). The Act may be enforced either by the government or,
under its qui tam provision, by a private person acting as a
"relator" on the government's behalf. 31 U.S.C. § 3730(b)(1);
*State Farm Fire & Cas. Co. v. United States ex rel. Rigsby*, 137
S. Ct. 436, 440 (2016). When a private party brings a qui tam
suit, the complaint is sealed (and thus unknown to the de-
fendant) but served on the government with a summary of all
material evidence. 31 U.S.C. § 3730(b)(2); *Kellogg Brown & Root
Servs., Inc. v. United States ex rel. Carter*, 135 S. Ct. 1970, 1973
(2015).

Upon learning of a qui tam action, the government has multiple options for action. One of those options is taking over the lawsuit, and, if the government does take control, the relator will receive 15% to 25% of any recovery. 31 U.S.C. § 3730(d)(1). The government also can decline to participate directly, and, if it chooses that option, the relator can continue prosecuting the case on the government's behalf. *See* 31 U.S.C. § 3730(b)(4)(B), (c)(3); *Kellogg Brown & Root Servs., Inc.*, 135 S. Ct. at 1973; *Stoner v. Santa Clara Cty. Office of Educ.*, 502 F.3d 1116, 1126–27 (9th Cir. 2007). A relator who successfully prosecutes a qui tam action without government involvement will receive 25% to 30% of the recovery. 31 U.S.C. § 3730(d)(2). A third option available to the government is seeking recovery for fraud through an "alternate remedy," including "any administrative proceeding to determine a civil money penalty." 31 U.S.C. § 3730(c)(5). When the government pursues an "alternate remedy," the relator has the same rights in that proceeding as if the qui tam action had continued, including the right to recover a percentage of any recovery. 31 U.S.C. § 3730(c)(5); *United States v. Sprint Commc'ns, Inc.*, 855 F.3d 985, 990 (9th Cir. 2017); *United States ex rel. Rille v. PricewaterhouseCoopers LLP*, 803 F.3d 368, 373 (8th Cir. 2015).

Conner worked at Mutual Bank (or its predecessor) from 2000 to 2007 and had transferred to the bank's headquarters in Harvey, Illinois, in 2005. At headquarters he reviewed appraisals for commercial real estate loans. In that role he noticed that Adams Value Corporation (a property appraisal company) had completed more than half of Mutual's appraisals. Conner concluded that Adams regularly had inflated values by 20% to 30%. He identified about 75 appraisals he thought were inflated, all but one of which Mutual Bank had

accepted. In October 2007 Conner refused to approve an Adams appraisal that he deemed incomplete and significantly overvalued. The bank fired him a week later. Eventually he brought this qui tam action under the False Claims Act. In addition to naming as defendants the directors and several officers of Mutual Bank, Conner sued Adams Value Corporation and its president.

Mutual Bank failed less than two years after Conner was fired. In his lawsuit he alleged that the defendants had intentionally overvalued properties serving as collateral for commercial real estate loans. By doing so they understated loan-to-value ratios reported to the FDIC and thus benefitted from a lower risk category and commensurately lower FDIC insurance premiums. Conner added that most of the loans could not have been approved if the collateral was valued accurately. He estimated that the FDIC had lost approximately $656 million from Mutual Bank's demise, including $300 to $400 million resulting from "commercial real estate loans with deliberately faulty appraisals." But Conner's qui tam action aimed only to recoup the deposit insurance premiums that should have been paid to the FDIC. In August 2012 the United States declined to take over the case (the reason is not disclosed in the record) but asked the district judge to require the government's written consent before allowing Conner to settle or dismiss the action.

Conner then went forward in the qui tam action by himself. But the FDIC, as receiver for the failed Mutual Bank, initiated its own action against many of the same defendants—though not against Adams or its president, Douglas Adams. *See F.D.I.C. v. Mahajan*, No. 11 C 7590, 2012 WL 3061852, at *1 (N.D. Ill. July 26, 2012). The FDIC alleged that

directors and officers of the bank had acted with gross negligence and breached their fiduciary duties. It asserted that in just four years Mutual Bank had nearly doubled its loan portfolio by giving a few overextended or nearly insolvent borrowers a dozen risky commercial loans to acquire or develop real estate. Then, as the bank grew, it neglected to hire or train enough staff to minimize the risk from those loans. The FDIC further alleged that the defendants had looted bank funds for personal bills (wedding expenses of one defendant and legal bills incurred by another's spouse in defending criminal charges), conducted a board meeting in Monte Carlo at the bank's expense, paid excessive amounts to contractors with personal connections to board members, and approved unlawful dividend payments. The FDIC also sued the bank's attorney and his law firm claiming malpractice, breach of fiduciary duty, and aiding and abetting breaches of fiduciary duty by the other defendants.

More than three years after the FDIC brought its case, Conner moved in his qui tam action to consolidate the FDIC's case with his. Conner argued that both lawsuits centered on the same transactions and occurrences because both involved bank directors overvaluing property and extending risky loans. The FDIC and many of the defendants in Conner's case opposed his motion. The FDIC disputed Conner's contention that the two cases overlapped factually, and it also noted that the defendants did not overlap entirely and that it had sued on behalf of the bank (as its receiver), not on behalf of the United States as Conner had done. The FDIC also disputed Conner's assertion that both suits focused on the same overarching fraud scheme, since just one of the loans underlying its suit was among those identified by Conner in his suit. And each case involved different legal issues, the FDIC contended,

since Conner's suit alleged violations of the False Claims Act, while the FDIC's claims concerned breaches of prudent banking practices, corporate waste, and legal malpractice. Many of the defendants made similar arguments, and two of the qui tam defendants added that consolidation would unduly prejudice them because they weren't defendants in the FDIC's case. Faced with this opposition, Conner withdrew his motion.

That was in February 2015. A month later Conner settled with four defendants who agreed to pay a lump sum, mostly to the government, but with a percentage to Conner. In June 2015 Conner hired new counsel and tried to renege, but the affected defendants moved to enforce the agreement. The government gave its approval after modest revisions requiring the defendants to immediately pay Conner's attorneys' fees while leaving for future negotiation the percentage of the recovery to be shared with him by the government. The district court enforced the revised agreement.

Conner, through his new counsel, then moved to intervene in the FDIC's case. By this point, according to Conner, the FDIC had informed him that it was settling with the defendants and, as relates to its lawsuit, would not give him a whistleblower award under the False Claims Act. Conner asserted that the Act entitled him to a share of the FDIC's recovery since, he contended, the FDIC's suit constituted a choice by the government to pursue an "alternate remedy" to address the violations he had uncovered, *see* 31 U.S.C. § 3730(c)(5).

A magistrate judge overseeing the FDIC's lawsuit recommended denying Conner's motion as untimely, since Conner had conceded knowing for years about the FDIC's case yet had waited until the eve of settlement to seek intervention.

Although this ground would have sufficed to deny Conner's motion, the magistrate judge further evaluated whether Conner had a legally protectable interest in the outcome of the FDIC's case. The answer was no, the magistrate judge reasoned, because when acting as a receiver the FDIC is not "the government" pursuing a civil penalty for fraud but instead is discharging its "responsibilities to pursue the Bank's litigation assets for an orderly liquidation and distribution among the Bank's creditors." Conner did not protest this decision, and the district court accepted it, denying Conner's motion. Conner did not appeal.

Meanwhile, a few days before the magistrate judge recommended denying Conner's motion to intervene, Conner had moved in this action for a determination of his share of any recovery by the FDIC, again asserting that the FDIC's proposed settlement constituted an alternate remedy to his False Claims Act case. Conner's motion was still pending when the district judge in the FDIC's lawsuit adopted the magistrate judge's report and recommendation and refused to permit Conner to intervene in that litigation.

The district court in this qui tam action then denied Conner's motion for a share of the FDIC's settlement on the ground that the issue presented—whether the FDIC had pursued an alternate remedy to Conner's case—already had been decided by the decision in the FDIC's case denying intervention. The court reasoned that both motions were based on Conner's alleged right to a portion of the proceeds in the FDIC's case. And, the court continued, the magistrate judge in the FDIC's lawsuit had concluded that the FDIC was not seeking an "alternate remedy" under the False Claims Act because it was acting as a receiver, not as "the government." Implicit

in that conclusion, the district court continued, is a determination that Conner did not have a legally protectable interest in the FDIC's settlement in its lawsuit. In light of that adverse ruling, the court reasoned, Connor is barred by the doctrine of issue preclusion from relitigating the same question in this suit.

Six defendants in Conner's qui tam suit then moved for summary judgment. (Two of the named defendants had been dismissed previously for lack of service.) The district court granted their motion, reasoning that Conner had failed to submit evidence substantiating his accusation that Mutual Bank gave inflated appraisals to the FDIC. After that Conner voluntarily dismissed the remaining defendants and filed a notice of appeal. Later he struck a bargain with the six defendants who had prevailed at summary judgment, promising not to challenge that adverse ruling in exchange for their promise not to seek costs under Federal Rule of Civil Procedure 54(d).

## II. ANALYSIS

On appeal Conner presents a single argument: that the district court erred in applying the doctrine of issue preclusion to deny his motion demanding a share of the FDIC's recovery in its separate case. None of the named defendants has a stake in the resolution of that issue, so none of them has filed a brief in this appeal. Only the FDIC is interested in defending the order denying Conner's demand for a cut of its recovery in the other case, and in this appeal the FDIC has submitted a brief as amicus curiae, purportedly in support of the named defendants.

To begin, because the decision sought to be given preclusive effect was rendered by a federal court, federal preclusion

law applies. *Bernstein v. Bankert*, 733 F.3d 190, 225 (7th Cir. 2013); *Ross ex rel. Ross v. Bd. of Educ. of Twp. High Sch. Dist. 211*, 486 F.3d 279, 283 (7th Cir. 2007). Under federal law, the doctrine of issue preclusion bars relitigating factual or legal issues if "(1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was fully represented in the prior action [i.e., their interests were represented even if they were not a party in the prior suit]." *Dexia Credit Local v. Rogan*, 629 F.3d 612, 628 (7th Cir. 2010). Conner does not contest the second or fourth elements. But he argues that there is no overlapping issue because, he says, the district court in his case needed to decide only whether the FDIC was acting as the government when it *initiated* its separate lawsuit, whereas the order denying his attempt to intervene decided that the FDIC had acted as a receiver "*after it initiated* the Related Action." Conner also insists that the third element is not met because, in his view, the district court denied his motion to intervene as untimely, not because of its belief that he is unentitled to a share of the FDIC's settlement proceed.

We conclude, however, that Conner misses the mark by focusing on *issues* instead of *claims*, since it's the doctrine of *claim preclusion* that bars his renewed effort to obtain a share of the FDIC's settlement proceeds. That doctrine bars litigating claims which were, or could have been, decided in a prior suit, even if the fresh attempt relies on "marginally different theories," *Maher v. F.D.I.C.*, 441 F.3d 522, 527 (7th Cir. 2006), so long as there is "(1) an identity of the parties or their privies; (2) [an] identity of the cause of action; and (3) a final judgment on the merits," *Matrix IV, Inc. v. Am. Nat'l. Bank & Tr. Co. of*

*Chicago*, 649 F.3d 539, 547 (7th Cir. 2011) (quoting *Alvear-Velez v. Mukasey*, 540 F.3d 672, 677 (7th Cir. 2008)). In analyzing this doctrine, we need not decide whether the district court's conclusion in the FDIC's suit that Conner lacked a legally cognizable interest in the settlement proceeds was essential to the denial of his claim for a share of those proceeds.

For purposes of the third element of claim preclusion, the *basis* of the earlier decision is unimportant so long as the claim was decided *on the merits*. Thus a dismissal of a suit may have preclusive effect even if it did not resolve the central controversy, *see, e.g., Am. Nat. Bank & Tr. Co. v. City of Chicago*, 826 F.2d 1547, 1552–53 (7th Cir. 1987), or even regarding issues not raised in the initial suit, *see, e.g., Matrix IV, Inc.* 649 F.3d at 547; *Aaron v. Mahl*, 550 F.3d 659, 664 (7th Cir. 2008). Conner and the FDIC have invested considerable energy debating whether both reasons given for denying Conner's motion to intervene would support application of *issue* preclusion, but the answer makes no difference. Conner insists that only the question of its timeliness was decided by the denial of his motion to intervene, but a denial of relief on the ground that the request came too late is still a decision on the merits. *See Arrigo v. Link*, 836 F.3d 787, 799 (7th Cir. 2016) (applying claim preclusion to bar lawsuit asserting claims for relief that, in previous suit, plaintiff had included in motion to amend complaint which was denied as untimely); *Kratville v. Runyon*, 90 F.3d 195, 198 (7th Cir. 1996) (noting that a dismissal based on statute of limitations or administrative deadline constitutes a decision on the merits for purposes of claim preclusion).

Of the two remaining elements of claim preclusion, the first—an identity of parties—is not disputed. Both times

when Conner took action aimed at sharing in the FDIC's settlement, he and the FDIC were the only parties of concern. Although in both lawsuits Conner and the FDIC might appear to be aligned against the named defendants, Conner's motion to intervene in the FDIC's case and his motion in this qui tam action pitted him against the FDIC as he tried to recover a whistleblower reward.

The only significant question, then, is whether both of Conner's motions present the same cause of action, or claim. On this question, we agree with the FDIC. Two causes of action are identical if each claim is supported by the same factual allegations, *Andersen v. Chrysler Corp.*, 99 F.3d 846, 852–55 (7th Cir. 1996); *Colonial Penn Life Ins. Co. v. Hallmark Ins. Adm'rs, Inc.*, 31 F.3d 445, 447 (7th Cir. 1994), and the judgment in each case would be based on the same evidence, *see Manicki v. Zeilmann*, 443 F.3d 922, 925–26 (7th Cir. 2006); *Himel v. Cont'l Ill. Nat. Bank & Tr. Co. of Chi.*, 596 F.2d 205, 209 (7th Cir. 1979). Conner alleged both in his motion to intervene and his motion in this case that the FDIC had violated the relator's-share provision of the False Claims Act by not paying him a portion of its settlement proceeds. Both motions sought to establish that the FDIC's case constituted an "alternate remedy" under the False Claims Act and that the FDIC had refused to pay Conner a portion. That Conner's motions sought the same compensation in different ways—the first time as part of a motion to intervene—is irrelevant; causes of action may be identical even if the litigant attempts different substantive or procedural strategies to pursue the same underlying claim. *Ross*, 486 F.3d at 283; *Okoro v. Bohman*, 164 F.3d 1059, 1062 (7th Cir. 1999); *Cheyenne River Sioux Tribe of Indians v. United States*, 338 F.2d 906, 908–09, 911 (8th Cir. 1964) (applying doctrine of

claim preclusion to bar relitigation of claim previously as-
serted in unsuccessful motion to intervene); *Bhd. of Locomotive
Firemen & Enginemen v. Seaboard Coast Line R. Co.*, 413 F.2d 19,
23–24 (5th Cir. 1969) (same). Moreover, Conner requested the
same relief under the same statutory provision in both mo-
tions, which is another consideration in deciding whether two
causes of action are identical. *See Highway J Citizens Grp. v.
U.S. Dep't of Transp.*, 456 F.3d 734, 742 (7th Cir. 2006). Finally,
a common-sense comparison of the request Conner made in
each suit similarly supports the conclusion that he should not
be permitted to repeat his demand for a share of the FDIC's
settlement proceeds. *See Ross*, 486 F.3d at 282 (noting that the
"common-sense question" of "why a second lawsuit should
be permitted after the first one apparently resolved the dis-
pute between the parties" is resolved by applying doctrine of
claim preclusion).

Accordingly, each element of claim preclusion is satisfied.
For that reason, we uphold the district court's denial of Con-
ner's motion in the qui tam action seeking a share of the set-
tlement proceeds in the FDIC's separate lawsuit.

## III. CONCLUSION

For the foregoing reasons we affirm the judgment.