(Slip Opinion) OCTOBER TERM, 2016 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## STATE FARM FIRE & CASUALTY CO. *v.* UNITED STATES *EX REL.* RIGSBY ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 15–513. Argued November 1, 2016—Decided December 6, 2016

The False Claims Act (FCA) authorizes private parties (known as relators) to seek recovery from persons who make false or fraudulent payment claims to the Federal Government, 31 U. S. C. §§3729–3730, and permits the Attorney General to intervene in a relator's action or bring an FCA suit in the first instance, §§3730(a)–(b). This system is designed to benefit both the relator and the Government. A relator who initiates a meritorious *qui tam* suit receives*, inter alia,* a percentage of the ultimate damages award, §3730(d), while "'encourag[ing] more private enforcement suits'" serves "'to strengthen the Government's hand in fighting false claims,'" *Graham County Soil and Water Conservation Dist.* v. *United States ex rel. Wilson*, 559 U. S. 280, 298. The FCA establishes specific procedures for relators to follow, including the requirement relevant here: "The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders." §3730(b)(2).

In the years before Hurricane Katrina, petitioner State Farm issued, as pertinent here, both Federal Government-backed flood insurance policies and petitioner's own general homeowner policies. Respondents Cori and Kerri Rigsby, former claims adjusters for one of petitioner's contractors, E. A. Renfroe & Co., filed a complaint under seal in April 2006, claiming that petitioner instructed them and other adjusters to misclassify wind damage as flood damage in order to shift petitioner's insurance liability to the Government. The District Court extended the length of the seal several times at the Government's request, but lifted the seal in part in January 2007, allowing disclosure of the action to another District Court hearing a suit by

Syllabus

E. A. Renfroe against respondents.  In August 2007, the District
Court lifted the seal in full.  The Government subsequently declined
to intervene.

Petitioner moved to dismiss the suit on the grounds that respond-
ents had violated the seal requirement.  Specifically, it alleged, re-
spondents' former attorney had disclosed the complaint's existence to
several news outlets, which issued stories about the fraud allega-
tions, but did not mention the existence of the FCA complaint; and
respondents had met with a Congressman who later spoke out
against the purported fraud.  The District Court applied the test for
dismissal set out in *United States ex rel. Lujan* v. *Hughes Aircraft
Co.*, 67 F. 3d 242, 245–247.  Balancing three factors—actual harm to
the Government, severity of the violations, and evidence of bad
faith—the court decided against dismissal.  Petitioner did not request
a lesser sanction.  The Fifth Circuit affirmed.  It first concluded that
a seal violation does not require mandatory dismissal of a relator's
complaint.  It then considered the same factors weighed by the Dis-
trict Court and reached a similar conclusion.

*Held*:

1. A seal violation does not mandate dismissal of a relator's com-
plaint.  Pp. 6–9.

(a) The FCA does not enact so harsh a rule.  Section 3730(b)(2)'s
requirement that a complaint "shall" be kept under seal is a manda-
tory rule for relators.  But the statute says nothing about the remedy
for violating that rule; and absent congressional guidance regarding a
remedy, "the sanction for breach [of a mandatory duty] is not loss of
all later powers to act."  *United States* v. *Montalvo-Murillo*, 495 U. S.
711, 718.  The FCA's structure supports this result.  The FCA has a
number of provisions requiring, in express terms, the dismissal of a
relator's action.  *E.g.*, §§3730(b)(5), (e)(1)–(2).  It is thus proper to in-
fer that Congress did not intend to require dismissal for a violation of
the seal requirement.  See *Marx* v. *General Revenue Corp.*, 568 U. S.
___, ___.  This result is also consistent with the general purpose of
§3730(b)(2), which was enacted as part of a set of reforms meant to
"encourage more private enforcement suits," S. Rep. No. 99–345,
pp. 23–24, and which was intended to protect the Government's in-
terests, allaying its concern that a relator filing a civil complaint
would alert defendants to a pending federal criminal investigation.  It
would thus make little sense to adopt a rigid interpretation that
prejudices the Government by depriving it of needed assistance from
private parties.  Pp. 6–7.

(b) Petitioner's arguments to the contrary are unavailing.  There
is no textual indication that Congress conditioned the authority to
file a private right of action on compliance with the seal requirement

or that the relator's ability to bring suit depends on adherence to the seal requirement. And the Senate Committee Report's recitation of the FCA's general purpose is best understood to support respondents rather than a mandatory dismissal rule. Moreover, because the FCA's text and structure are clear, there is no need to accept petitioner's invitation to consider a few stray sentences from the legislative history. Pp. 8–9.

2. The District Court did not abuse its discretion by denying petitioner's motion to dismiss. The question whether dismissal is appropriate should be left to the sound discretion of the district court. While the *Hughes Aircraft* factors appear to be appropriate, it is unnecessary to explore these and other relevant considerations, which can be discussed in the course of later cases. Pp. 9–10.

3. On this record, where petitioner requested no sanction other than dismissal, the question whether a lesser sanction—such as monetary penalties—is warranted is not preserved. P. 10.

794 F. 3d 457, affirmed.

KENNEDY, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 15–513

STATE FARM FIRE AND CASUALTY COMPANY, PETITIONER *v.* UNITED STATES, EX REL. CORI RIGSBY, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

[December 6, 2016]

JUSTICE KENNEDY delivered the opinion of the Court.

This case addresses the question of the proper remedy when there is a violation of the False Claims Act (FCA) requirement that certain complaints must be sealed for a limited time period. See 31 U. S. C. §3730(b)(2). There are two questions presented before this Court. First, do any and all violations of the seal requirement mandate dismissal of a private party's complaint with prejudice? Second, if dismissal is not mandatory, did the District Court here abuse its discretion by declining to dismiss respondents' complaint?

I

A

The FCA imposes civil liability on an individual who, *inter alia,* "knowingly presents . . . a false or fraudulent claim for payment or approval" to the Federal Government. §3729(a)(1)(A). Almost unique to the FCA are its *qui tam* enforcement provisions, which allow a private party known as a "relator" to bring an FCA action on behalf of the Government. §3730(b)(1); *Vermont Agency of*

*Natural Resources* v. *United States ex rel. Stevens*, 529 U. S. 765, 768, n. 1 (2000) (listing three other *qui tam* statutes). The Attorney General retains the authority to intervene in a relator's ongoing action or to bring an FCA suit in the first instance. §§3730(a)–(b).

This system is designed to benefit both the relator and the Government. A relator who initiates a meritorious *qui tam* suit receives a percentage of the ultimate damages award, plus attorney's fees and costs. §3730(d). In turn, "'encourag[ing] more private enforcement suits'" serves "'to strengthen the Government's hand in fighting false claims.'" *Graham County Soil and Water Conservation Dist.* v. *United States ex rel. Wilson*, 559 U. S. 280, 298 (2010).

The FCA places a number of restrictions on suits by relators. For example, under the provision known as the "first-to-file bar," a relator may not "'bring a related action based on the facts underlying [a] pending action.'" *Kellogg Brown & Root Services, Inc.* v. *United States ex rel. Carter*, 575 U. S. ___, ___ (2015) (slip op., at 11) (quoting §3730(b)(5); emphasis deleted). Other FCA provisions require compliance with statutory requirements as express conditions on the relators' ability to bring suit. The paragraph known as the "public disclosure bar," for instance, provided at the time this suit was filed that "'[n]o court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions . . . unless the action is brought by the Attorney General or . . . an original source of the information.'" *Graham County Soil and Water Conservation Dist.* v. *United States ex rel. Wilson*, *supra,* at 283, n. 1, 285–286 (quoting 31 U. S. C. §3730(e)(4)(A) (2006 ed.); footnote omitted).

The FCA also establishes specific procedures for the relator to follow when filing the complaint. Among other things, the relator must serve on the Government "[a] copy

of the complaint and written disclosure of substantially all
material evidence and information the [relator] possesses."
§3730(b)(2). Most relevant here, the FCA provides: "The
complaint shall be filed in camera, shall remain under seal
for at least 60 days, and shall not be served on the defend-
ant until the court so orders." *Ibid.*

## B

Petitioner State Farm is an insurance company. In the
years before Hurricane Katrina, petitioner issued two
types of homeowner-insurance policies that are relevant in
this case: (1) Federal Government-backed flood insurance
policies and (2) petitioner's own general homeowner insur-
ance policies. The practical effect for homeowners who
were affected by Hurricane Katrina and who purchased
both policies was that petitioner would be responsible for
paying for wind damage, while the Government would pay
for flood damage. As the Court of Appeals noted, this
arrangement created a potential conflict of interest: Peti-
tioner had "an incentive to classify hurricane damage as
flood-related to limit its economic exposure." 794 F. 3d
457, 462 (CA5 2015).

Respondents Cori and Kerri Rigsby are former claims
adjusters for one of petitioner's contractors, E. A. Renfroe
& Co. Together with other adjusters, they were responsi-
ble for visiting the damaged homes of petitioner's custom-
ers to determine the extent to which a homeowner was
entitled to an insurance payout. According to respond-
ents, petitioner instructed them and other adjusters to
misclassify wind damage as flood damage in order to shift
petitioner's insurance liability to the Government. See *id.,*
at 463–464 (summarizing trial evidence).

In April 2006, respondents filed their *qui tam* complaint
under seal. At the Government's request, the District
Court extended the length of the seal a number of times.
In January 2007, the court lifted the seal in part, allowing

disclosure of the *qui tam* action to another District Court hearing a suit by E. A. Renfroe against respondents for purported misappropriation of documents related to petitioner's alleged fraud. See *E. A. Renfroe & Co.* v. *Moran*, No. 2:06–cv–1752 (ND Ala.). In August 2007, the District Court lifted the seal in full. In January 2008, the Government declined to intervene.

In January 2011, petitioner moved to dismiss respondents' suit on the grounds that they had violated the seal requirement. The parties do not dispute the essential background. In the months before the seal was lifted in part, respondents' then-attorney, one Dickie Scruggs, e-mailed a sealed evidentiary filing that disclosed the complaint's existence to journalists at ABC, the Associated Press, and the New York Times. All three outlets issued stories discussing the fraud allegations, but none revealed the existence of the FCA complaint. Respondents themselves met with Mississippi Congressman Gene Taylor, who later spoke out in public against petitioner's purported fraud, although he did not mention the existence of the FCA suit at that time. After the seal was lifted in part, Scruggs disclosed the existence of the suit to various others, including a public relations firm and CBS News.

At the time of the motion to dismiss in 2011, respondents were represented neither by Scruggs nor by any of the attorneys who had worked with him. In March 2008, Scruggs withdrew from respondents' case after he was indicted for attempting to bribe a state-court judge. Two months later, the District Court removed the remaining Scruggs-affiliated attorneys from the case, based on their alleged involvement in improper payments made from Scruggs to respondents. The District Court did not punish respondents themselves for the payments because they were not made "aware of the ethical implications" and, as laypersons, "are not bound by the rules of professional conduct that apply to" attorneys. App. 21.

In deciding petitioner's motion the District Court considered only the seal violations that occurred before the seal was lifted in part, reasoning the partial lifting in effect had mooted the seal. Applying the test for dismissal set out in *United States ex rel. Lujan* v. *Hughes Aircraft Co.*, 67 F. 3d 242, 245–247 (CA9 1995), the District Court balanced three factors: (1) the actual harm to the Government, (2) the severity of the violations, and (3) the evidence of bad faith. The court decided against dismissal. Petitioner did not request some lesser sanction. The case went to trial, resulting in a victory for respondents on what the Court of Appeals referred to as a "bellwether" claim regarding a single damaged home. 794 F. 3d, at 462.

The Court of Appeals for the Fifth Circuit affirmed the denial of petitioner's motion to dismiss. The court recognized that the case presented two related issues of the first impression under its case law: (1) whether a seal violation requires mandatory dismissal of a relator's complaint and, if not, (2) what standard governs a district court's decision to dismiss. The court noted that the Courts of Appeals for the Second and Ninth Circuits had held that the FCA does not require automatic dismissal for a seal violation, while the Court of Appeals for the Sixth Circuit had held that dismissal is mandatory. See *United States ex rel. Pilon* v. *Martin Marietta Corp.*, 60 F. 3d 995, 998 (CA2 1995); *United States ex rel. Lujan* v. *Hughes Aircraft Co., supra,* at 245; *United States ex rel. Summers* v. *LHC Group Inc.*, 623 F. 3d 287, 296 (CA6 2010); see also *United States ex rel. Smith* v. *Clark/Smoot/Russell*, 796 F. 3d 424, 430 (CA4 2015) (following *Pilon*).

After a careful analysis, the Court of Appeals for the Fifth Circuit held automatic dismissal is not required by the FCA. 794 F. 3d, at 470–471. It then considered the same factors the District Court had weighed and came to a

similar conclusion. *Id.,* at 471–472. First, the Court of Appeals held the Government was in all likelihood not harmed by the disclosures because none of them led to the publication of the pendency of the suit before the seal was lifted in part. Second, the Court of Appeals determined the violations were not severe in their repercussions because respondents had complied with the seal requirement when they first filed their suit. Third, the Court of Appeals assumed, without deciding, that the bad behavior of respondents' then-attorney could be imputed to respondents; but it held that, even presuming the attribution of bad faith, the other factors favored respondents.

This Court granted certiorari, 578 U. S. ___ (2016), and now affirms.

## II

### A

Petitioner's primary contention is that a violation of the seal provision necessarily requires a relator's complaint to be dismissed. The FCA does not enact so harsh a rule.

Section 3730(b)(2)'s text provides that a complaint "shall" be kept under seal. True, this language creates a mandatory rule the relator must follow. See *Rockwell Int'l Corp.* v. *United States*, 549 U. S. 457, 464 (2007) ("As required under the Act, [the relator] filed his complaint under seal . . . "); see also *Kingdomware Technologies, Inc.* v. *United States*, 579 U. S. ___, ___ (2016) (slip op., at 9) ("[T]he word 'shall' usually connotes a requirement"). The statute says nothing, however, about the remedy for a violation of that rule. In the absence of congressional guidance regarding a remedy, "[a]lthough the duty is mandatory, the sanction for breach is not loss of all later powers to act." *United States* v. *Montalvo-Murillo*, 495 U. S. 711, 718 (1990).

The FCA's structure is itself an indication that violating the seal requirement does not mandate dismissal. This

Court adheres to the general principle that Congress' use of "explicit language" in one provision "cautions against inferring" the same limitation in another provision. *Marx* v. *General Revenue Corp.*, 568 U. S. \_\_\_, \_\_\_ (2013) (slip op., at 12). And the FCA has a number of provisions that do require, in express terms, the dismissal of a relator's action. *Supra*, at 2 (citing §3730(b)(5)); see also §§3730(e)(1)–(2) ("[n]o court shall have jurisdiction" over certain FCA claims by relators against a member of the military or of the judicial, legislative, or executive branches). It is proper to infer that, had Congress intended to require dismissal for a violation of the seal requirement, it would have said so.

The Court's conclusion is consistent with the general purpose of §3730(b)(2). The seal provision was enacted in the 1980's as part of a set of reforms that were meant to "encourage more private enforcement suits." S. Rep. No. 99–345, pp. 23–24 (1986). At the time, "perhaps the most serious problem plaguing effective enforcement" of the FCA was "a lack of resources on the part of Federal enforcement agencies." *Id.,* at 7. The Senate Committee Report indicates that the seal provision was meant to allay the Government's concern that a relator filing a civil complaint would alert defendants to a pending federal criminal investigation. *Id.*, at 24. Because the seal requirement was intended in main to protect the Government's interests, it would make little sense to adopt a rigid interpretation of the seal provision that prejudices the Government by depriving it of needed assistance from private parties. The Federal Government agrees with this interpretation. It informs the Court that petitioner's test "would undermine the very governmental interests that the seal provision is meant to protect." Brief for United States as *Amicus Curiae* 10.

B

Petitioner's arguments to the contrary are unavailing. First, petitioner urges that because the seal provision appears in the subsection of the FCA creating the relator's private right of action, Congress intended to condition the right to bring suit on compliance with the seal requirement. It is true that, as discussed further below, the Court sometimes has concluded that Congress conditioned the authority to file a private right of action on compliance with a statutory mandate. *E.g., Hallstrom* v. *Tillamook County*, 493 U. S. 20, 25–26 (1989). There is no textual indication, however, that Congress did so here.

Section 3730(b)(2) does not tie the seal requirement to the right to bring the *qui tam* suit in conditional terms. As noted above, the statute just provides: "The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders."

The text at issue in *Hallstrom*, by contrast, was quite different than the statutory language that controls here. The *Hallstrom* statute, part of the Resource Conservation and Recovery Act of 1976, provided: "'No action may be commenced . . . prior to sixty days after the plaintiff has given notice of the violation'" to the Government. 493 U. S., at 25.

Petitioner cites two additional cases to support its argument, but those decisions concerned statutes that used even clearer conditional words, like "if" and "unless." See *United States ex rel. Texas Portland Cement Co.* v. *McCord*, 233 U. S. 157, 161 (1914) (statute allowed creditors of Government contractors to bring suit "'if no suit should be brought by the United States within six months from the completion and final settlement of said contract'"); *McNeil* v. *United States*, 508 U. S. 106, 107, n. 1 (1993) (statute provided that "'[a]n action shall not be instituted upon a claim against the United States for

money damages . . . unless the claimant shall have first presented the claim to the appropriate Federal agency'").

Again, the FCA's structure shows that Congress knew how to draft the kind of statutory language that petitioner seeks to read into §3730(b)(2). The applicable version of the public disclosure bar, for example, requires a district court to dismiss an action when the underlying information has already been made available to the public, "'unless'" the plaintiff is the Attorney General or an original source. *Graham County Soil and Water Conservation Dist.* v. *United States ex rel. Wilson,* 559 U. S., at 286.

Second, petitioner contends that because this Court has described the FCA's *qui tam* provisions as "effecting a partial assignment of the Government's damages claim," *Vermont Agency of Natural Resources* v. *United States ex rel. Stevens*, 529 U. S., at 773, adherence to all of the FCA's mandatory requirements—no matter how small—is a condition of the assignment. This argument fails for the same reason as the one discussed above: Petitioner can show no textual indication in the statute suggesting that the relator's ability to bring suit depends on adherence to the seal requirement.

Third, petitioner points to a few stray sentences in the Senate Committee Report that it claims support the mandatory dismissal rule. As explained above, however, the Report's recitation of the general purpose of the statute is best understood to support respondents. *Supra,* at 7. And, furthermore, because the meaning of the FCA's text and structure is "plain and unambiguous, we need not accept petitioner['s] invitation to consider the legislative history." *Whitfield* v. *United States*, 543 U. S. 209, 215 (2005).

## III

Petitioner's secondary argument is that the District Court did not consider the proper factors when declining

to dismiss respondents' complaint or, at a minimum, that it was plain error not to consider respondents' conduct after the seal was lifted in part.  This Court holds the District Court did not abuse its discretion by denying petitioner's motion, much less commit plain error.  In light of the questionable conduct of respondents' prior attorney, it well may not have been reversible error had the District Court granted the motion; that possibility, however, need not be considered here.

In general, the question whether dismissal is appropriate should be left to the sound discretion of the district court.  While the factors articulated in *United States ex rel. Lujan* v. *Hughes Aircraft Co.* appear to be appropriate, it is unnecessary to explore these and other relevant considerations.  These standards can be discussed in the course of later cases.

## IV

Petitioner and its *amici* place great emphasis on the reputational harm FCA defendants may suffer when the seal requirement is violated.  But even if every seal violation does not mandate dismissal, that sanction remains a possible form of relief.  District courts have inherent power, moreover, to impose sanctions short of dismissal for violations of court orders.  See *Chambers* v. *NASCO, Inc.*, 501 U. S. 32, 43–46 (1991).  Remedial tools like monetary penalties or attorney discipline remain available to punish and deter seal violations even when dismissal is not appropriate.

Of note in this case, petitioner did not request any sanction other than dismissal.  Tr. of Oral Arg. 3–4, 17.  Had petitioner sought some lesser sanctions, the District Court might have taken a different course. Yet petitioner failed to do so.  On this record, the question whether a lesser sanction is warranted is not preserved.

The judgment of the Court of Appeals for the Fifth Circuit is

*Affirmed.*