UNITED STATES EX REL. Benjamin CARTER, Plaintiff-Appellant,

v.

HALLIBURTON CO.; Kellogg Brown & Root Services, Inc.; Service Employees International Inc.; KBR, Inc., Defendants-Appellees.

Chamber of Commerce of the United
States of America, Amicus
Supporting Appellees.

No. 16-1262

United States Court of Appeals,
Fourth Circuit.

Argued: March 22, 2017

Decided: July 31, 2017

ARGUED: David Smart Stone, STONE & MAGNANINI LLP, Berkeley Heights, New Jersey, for Appellant. John Patrick Elwood, VINSON & ELKINS LLP, Washington, D.C., for Appellees. ON BRIEF: David Ludwig, DUNLAP, BENNETT & LUDWIG, PLLC, Leesburg, Virginia; Robert A. Magnanini, STONE & MAGNANINI LLP, Berkeley Heights,

New Jersey, for Appellant. Craig D. Margolis, Jeremy C. Marwell, Tirzah S. Lollar, Ralph C. Mayrell, VINSON & ELKINS LLP, Washington, D.C., for Appellees. Kate Comerford Todd, Steven P. Lehotsky, U.S. CHAMBER LITIGATION CENTER, Washington, D.C.; Jonathan S. Franklin, Mark Emery, NORTON ROSE FULBRIGHT US LLP, Washington, D.C., for Amicus Curiae.

Before AGEE, WYNN, and FLOYD, Circuit Judges.

FLOYD, Circuit Judge:

The False Claims Act (FCA) empowers private individuals acting on behalf of the government to bring civil actions against those that defraud the government. The FCA contains a provision, known as the "first-to-file" rule, which bars these private individuals, known as relators, from bringing actions under the FCA while a related action is pending. In this case, back before this Court for a third time, we consider whether the first-to-file rule mandates dismissal of a relator's action that was brought while related actions were pending, even after the related actions have been dismissed and the relator's complaint has been amended, albeit without mention of the related actions. We conclude that it does.

I.

A.

The FCA imposes liability for knowingly presenting false or fraudulent claims to the government of the United States for payment or approval. 31 U.S.C. § 3729(a)(1). "In adopting the FCA, 'the objective of Congress was broadly to protect the funds and property of the government.'" *United States ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.*, 612 F.3d 724, 728 (4th Cir. 2010) (quoting *Rainwater v. United States*, 356 U.S. 590, 592, 78 S.Ct. 946, 2 L.Ed.2d 996 (1958)).

Liability under the FCA is no small matter. An FCA violator may be held responsible for treble damages in addition to civil penalties. See 31 U.S.C. § 3729(a)(1). The FCA's liability scheme is enforced through civil actions filed by the government, 31 U.S.C. § 3730(a), as well as through civil actions—known as *qui tam* actions—that are filed by private parties—known as relators—"in the name of the Government," 31 U.S.C. § 3730(b)(1).

In a *qui tam* action under the FCA, a relator files the complaint under seal, and serves a copy of the complaint and an evidentiary disclosure on the government. 31 U.S.C. § 3730(b)(2). This procedure enables the government to investigate the matter, so that it may decide whether to take over the relator's action or to instead allow the relator to litigate the action in the government's place. See *Smith v. Clark/Smoot/Russell*, 796 F.3d 424, 430 (4th Cir. 2015); 31 U.S.C. § 3730(b)(4). A relator who brings a meritorious *qui tam* action receives attorney's fees, court costs, and a percentage of recovered proceeds. See *State Farm Fire & Cas. Co. v. United States ex rel. Rigsby*, — U.S. —, 137 S.Ct. 436, 440, 196 L.Ed.2d 340 (2016); 31 U.S.C. § 3730(d).

"Although designed to incentivize whistleblowers, the FCA also seeks to prevent parasitic lawsuits based on previously disclosed fraud." *United States ex rel. Beauchamp v. Academi Training Ctr.*, 816 F.3d 37, 39 (4th Cir. 2016). To that end, the FCA contains strict limits on its *qui*

*tam* provisions, including a statutory "first-to-file" rule. Under that rule, "[w]hen a person brings an action under [the FCA], no person other·than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). "If a court finds that the particular action before it is barred by the first-to-file rule, the court lacks subject matter.jurisdiction over the later-filed matter," and dismissal is therefore required. *United States ex rel. Carson v. Manor Care, Inc.*, 851 F.3d 293, 303 (4th Cir. 2017).[1]

### B.

Appellees Halliburton Company; Kellogg Brown & Root Services, Inc.; KBR, Inc.; and Service Employees International, Inc. (collectively, "KBR"), are a group of defense contractors and related entities that provided logistical services to the United States military during the armed conflict in Iraq. From January to April 2005, Appellant Benjamin Carter worked for KBR at a water purification unit employed to provide clean water to American troops serving in Iraq.

In June 2011, Carter filed a *qui tam* complaint against KBR in the Eastern District of Virginia. *See United States ex rel. Carter v. Halliburton Co.* (the "Carter Action"), No. 11-cv-602 (E.D. Va. filed June 2, 2011). In his complaint, Carter alleged that KBR had violated the FCA by fraudulently billing the government in connection with its water purification services.[2]

At the time the Carter Action was brought, two allegedly related actions were already pending: *United States ex rel. Duprey*, No. 8:07-cv-1487 (D. Md. filed June 5, 2007) (the "Maryland Action"), and a sealed action filed in Texas in 2007 (the "Texas Action"). However, the Maryland Action was dismissed in October 2011, and the Texas Action was dismissed in March 2012.

In November 2011, the district court ruled that the Maryland Action was related to the later-filed Carter Action, and that therefore the latter action was precluded by the first-to-file rule. The fact that the Maryland Action had been dismissed prior to the district court's ruling on the Carter Action gave the court no pause, because it believed that "whether a *qui tam* action is barred by [the first-to-file rule] is determined by looking at the facts as they existed when the action was brought." *United States ex rel. Carter v. Halliburton Co. (Carter I )*, No. 1:11-cv-602, 2011 WL 6178878, at *8 (E.D. Va. Dec. 12, 2011) (citation omitted). Because the Maryland Action was pending on the date the Carter Action was brought, the Carter Action ran afoul of the·district court's understanding of the first-to-file rule.[3]

---

1. We note briefly that two of our sister circuits have held that a first-to-file defect bears only on the merits of a relator's action, rather than on a district court's jurisdiction over it. *See United States ex rel. Hayes v. Allstate Ins. Co.*, 853 F.3d 80, 85–86 (2d Cir. 2017); *United States ex rel. Heath v. AT&T, Inc.*, 791 F.3d 112, 119–21 (D.C. Cir. 2015). We have previously held otherwise, *see Carson*, 851 F.3d at 303, and we do not attempt to revisit this Circuit's rule here.

2. The Carter Action was not Carter's first attempt to sue KBR under the FCA. For a discussion of unsuccessful, pre-Carter Action suits brought by Carter against KBR, see *United States ex rel. Carter v. Halliburton Co. (Carter II )*, 710 F.3d 171, 174–76 (4th Cir. 2013).

3. Because it did not have to reach the issue, the district court reserved judgment on whether the Texas Action also precluded the Carter Action.

Additionally, the district court held that all but one of the Carter Action's claims fell outside the applicable six-year statute of limitations on civil actions. The court added that all of the Carter Action's claims would fall outside the limitations period if Carter were to refile his action. Finally, the court explained that neither the Wartime Suspension and Limitations Act (WSLA) nor the principle of equitable tolling could toll the statute of limitations on the Carter Action's claims. *See id.* at \*8–12 & n.11. As such, the district court dismissed the Carter Action with prejudice.

Carter appealed the dismissal of the Carter Action to this Court. Carter's appeal centered on first-to-file issues, as well as the possibility that the WSLA tolled the statute of limitations on his claims. Carter did not, however, contest the district court's decision to assess the first-to-file rule based on the facts as they existed at the time that the Carter Action was brought.

This Court rejected the district court's statute of limitations conclusion, reasoning that the WSLA applied to civil actions and suspended the time for filing the Carter Action. *See Carter II,* 710 F.3d at 177–81. Thus, we reversed the district court's holding that the claims in the Carter Action were time-barred.

We then addressed the first-to-file rule. We agreed with the district court that courts must "look at the facts as they existed when the claim was brought to determine whether an action is barred by the first-to-file bar." *Id.* at 183. As such, we concluded that the Carter Action must be dismissed under the first-to-file rule, because the Maryland and Texas Actions were pending at the time the related Car-

ter Action was brought. We clarified, however, that "once a case is no longer pending the first-to-file bar does not stop a relator from filing a related case." *Id.* Applying this logic, and finding no statute of limitations issue, we ruled that the district court's dismissal of the Carter Action should have been without prejudice instead of with prejudice.

KBR subsequently petitioned the Supreme Court for certiorari. KBR's petition challenged this Court's holding in connection with the WSLA, as well as its holding that a relator could bring an FCA action after the dismissal of a related action. *See* Petition for a Writ of Certiorari at 1–4, *Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter (Carter III ),* —— U.S. ——, 135 S.Ct. 1970, 191 L.Ed.2d 899 (2015) (No. 12-1497), 2013 WL 3225969. Notably, KBR's petition never questioned this Court's holding that the first-to-file analysis depends on the set of facts in existence at the time an FCA action is filed.

Carter opposed certiorari, insisting that this Court "correctly decided that the district court's jurisdictional dismissal of the case should have been without prejudice." Brief in Opposition at 17, *Carter III,* —— U.S. ——, 135 S.Ct. 1970, 191 L.Ed.2d 899 (No. 12-1497), 2013 WL 4541112. He, too, did not question this Court's decision to conduct its first-to-file analysis based on the facts in existence at the time that the Carter Action was brought.[4]

The Supreme Court granted certiorari, and then affirmed in part and reversed in part this Court's decision. *See Kellogg Brown & Root Services, Inc. v. U.S., ex rel. Carter (Carter III ),* —— U.S. ——, 135

---

4. In 2013, while the Supreme Court was still considering Carter's petition for certiorari, Carter refiled his complaint in the Eastern District of Virginia. The district court, howev-

er, dismissed Carter's 2013 complaint on first-to-file grounds, because it was brought while the Carter Action was still pending before the Supreme Court.

S.Ct. 1970, 191 L.Ed.2d 899 (2015). The Supreme Court began by reversing. this Court's conclusion that the WSLA's tolling provisions apply to civil actions like the Carter Action. *Id.* at 1975–78.

The Supreme Court acknowledged, however, that Carter had raised additional arguments that, if successful, could render at least one claim of his timely on remand. Accordingly, the Court proceeded to explore the potential application of the first-to-file rule. The Court held that the first-to-file rule does not keep later actions out of court in perpetuity, *id.* at 1978–79; rather, the rule only keeps later actions out of court if their earlier-filed counterparts are "pending," which the Court defined to mean "[r]emaining undecided," *id.* at 1979 (quoting *Pending, Black's Law Dictionary* 1314 (10th ed. 2014)). The Supreme Court, therefore, agreed with this Court's conclusion that. dismissal with prejudice of any timely aspect of the Carter Action was improper. The Court then remanded this case for further proceedings.

On remand, this Court addressed an argument pressed by Carter that he could rely on the principle of equitable tolling to render the Carter Action timely. *See United States ex rel. Carter v. Halliburton Co. (Carter IV )*, 612 Fed.Appx. 180 (4th Cir. 2015) (per curiam). We held that Carter did not properly preserve the issue of equitable tolling, and so we summarily affirmed the district court's refusal to equitably toll the statute of limitations. *Id.* at 180.

We acknowledged, however, that the district court's judgment was not entirely error-free, because dismissal with prejudice of the one claim Carter brought within the limitations period. was not called for under the first-to-file rule. *Id.* at 181. We therefore remanded this case to the district court for further proceedings.

On remand, Carter objected to the applicability of the first-to-file rule. Carter argued that the dismissals of the related Maryland and Texas Actions cured. any first-to-file defect in the Carter Action.

Carter also filed a motion to amend the Carter Action complaint under Federal Rule of Civil Procedure 15(a), and argued that an amendment would confirm the inapplicability of the first-to-file rule to the Carter Action. Carter's proposed amendments, however, did not address the dismissals of the Maryland and Texas Actions, but instead centered on elucidating his damages theories with information that was available prior to the filing of the Carter Action.

Despite Carter's objections, the district court on remand invoked the first-to-file rule and dismissed the Carter Action without prejudice. *United States ex rel. Carter v. Halliburton Co. (Carter V )*, 144 F.Supp.3d 869, .873 (E.D. Va. 2015). The court reiterated its view that the date that an action is brought is dispositive in a first-to-file analysis, and concluded that the fact that the Maryland and Texas Actions were both still pending on the date the complaint in the Carter Action was filed rendered the Carter Action precluded by the first-to-file rule. *Id.* at 877.

The district court also rejected Carter's efforts to sidestep the first-to-file rule through amendment. *Id.* at 883. The court explained that Carter's proposed amendment could not change the fact that the Carter Action was brought in violation of the first-to-file rule. Accordingly, the court denied Carter's motion for amendment on futility grounds.

Subsequently, Carter requested reconsideration of the district court's ruling pursuant to Federal Rule of Civil Procedure 59(e). For support, Carter cited *United States ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1 (1st Cir. 2015), an inter-

vening First Circuit decision holding that an FCA relator could cure a first-to-file defect by supplementing his or her complaint—pursuant to Federal Rule of Civil Procedure 15(d)—with an allegation that the earlier-filed, related actions that gave rise to the first-to-file defect had been dismissed.

The district court denied Carter's motion for reconsideration, explaining that *Gadbois* did not constitute new controlling law justifying reconsideration because it was decided outside this Circuit. *United States ex rel. Carter v. Halliburton Co.* (*Carter VI*), 315 F.R.D. 56, 59 (E.D. Va. 2016). The court added that, in any event, it found *Gadbois* unpersuasive. *Id.* at 59–60.

Carter timely noticed an appeal of the district court's rulings dismissing the Carter Action, denying Carter's motion for amendment, and denying Carter's motion for reconsideration. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## II.

This Court "reviews a dismissal for lack of subject matter jurisdiction and questions of statutory interpretation de novo." *Carson*, 851 F.3d at 302. We review a denial of leave to amend a complaint for abuse of discretion. *Franks v. Ross*, 313 F.3d 184, 198 n.15 (4th Cir. 2002). We likewise review a denial of a motion for reconsideration under the deferential abuse of discretion standard. *United States v. Holland*, 214 F.3d 523, 527 (4th Cir. 2000). We may affirm on any ground apparent from the record before us. *United States v. Dozier*, 848 F.3d 180, 188 (4th Cir. 2017).

## III.

Although the Carter Action was brought while related FCA actions—namely the Maryland and Texas Actions—were still pending, Carter argues that the intervening dismissals of the latter actions dictate that the dismissal of the Carter Action on first-to-file grounds was unwarranted. We disagree.

### A.

#### 1.

The first-to-file rule provides that "[w]hen a person brings an action under [the FCA], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). Our first decision in this case held that courts must "look at the facts as they existed when the claim was brought to determine whether an action is barred by the first-to-file bar." *Carter II*, 710 F.3d at 183. We reaffirm this holding today.

The basis for the above-described holding was the relevant statutory text, which imposes a restriction on the "bring[ing]" of an "action." 31 U.S.C. § 3730(b)(5). In ordinary parlance, one "bring[s] an action" by "institut[ing] legal proceedings." *Bring an Action, Black's Law Dictionary* 231 (10th ed. 2014). Put another way, "[o]ne 'brings' an action by commencing suit." *United States ex rel. Chovanec v. Apria Healthcare Group, Inc.*, 606 F.3d 361, 362 (7th Cir. 2010); *see also Goldenberg v. Murphy*, 108 U.S. 162, 163, 2 S.Ct. 388, 27 L.Ed. 686 (1883) ("A suit is brought when in law it is commenced."); *Harris v. Garner*, 216 F.3d 970, 974 (11th Cir. 2000) (en banc) (" '[B]rought' and 'bring' refer to the filing or commencement of a lawsuit, not to its continuation."); *Chandler v. D.C. Dep't of Corr.*, 145 F.3d 1355, 1359 (D.C. Cir. 1998) ("[T]he phrase 'bring a civil action' means to initiate a suit.").

■ Accordingly, the appropriate reference point for a first-to-file analysis is the set of facts in existence at the time that the FCA action under review is commenced. Facts that may arise after the commencement of a relator's action, such as the dismissals of earlier-filed, related actions pending at the time the relator brought his or her action, do not factor into this analysis.

## 2.

■ Carter asserts that our prior holding that a first-to-file analysis turns on the set of facts existing at the time an FCA action was commenced has been undermined by the Supreme Court's intervening decision in this case. *See Carter III*, 135 S.Ct. 1970. We disagree.

As explained above, in our original decision in this case, we reversed the district court's dismissal of the Carter Action with prejudice, and remanded with instructions to have the Carter Action dismissed without prejudice. The basis for our decision to dismiss was our view that Carter had violated the first-to-file rule by bringing the Carter Action while related FCA actions were still pending; the basis for our decision to dismiss *without prejudice* was our view that Carter could refile his case following the dismissals of earlier-filed, related FCA actions. *See Carter II*, 710 F.3d at 183.

Carter then petitioned for certiorari, and the Supreme Court granted that petition. *See Carter III*, 135 S.Ct. at 1975. As relevant here, the Court in *Carter III* stated that it was "consider[ing] whether [Carter's] claims must be dismissed with prejudice under the first-to-file rule." *Id.* at 1978. The answer to this question turned on how a court should read the first-to-file rule's prohibition on the bringing of an FCA action while a related action is "pending." 31 U.S.C. § 3730(b)(5). The Supreme Court held that, in accordance with the "ordinary meaning" of the term "pending," a *"qui tam* suit under the FCA ceases to be 'pending' once it is dismissed." *Carter III*, 135 S.Ct. at 1978–79. The Supreme Court concluded, "[w]e therefore agree with the Fourth Circuit that the dismissal with prejudice of [Carter's] one live claim was error." *Id.* at 1979.

The Supreme Court in *Carter III* did not reject, or even comment on, this Court's holding that a court must "look at the facts as they existed when the claim was brought to determine whether an action is barred by the first-to-file bar." *Carter II*, 710 F.3d at 183. As such, we conclude that *Carter III* left the above-described holding intact.

Carter resists this conclusion, based on unreasonable readings of certain statements from *Carter III*. Carter first relies on the Supreme Court's statement that "an earlier suit bars a later suit while the earlier suit remains undecided but ceases to bar that suit once it is dismissed." *Carter III*, 135 S.Ct. at 1978. Carter, in effect, reads the Court's statement to mean that "an earlier suit bars *the continuation of* a later suit while the earlier suit remains undecided but ceases to bar *the continuation of* that suit once it is dismissed." This reading would empower courts conducting a first-to-file analysis to take into account the dismissals of an action giving rise to a relator's first-to-file problems.

We cannot support Carter's reading. Instead, we read the above-described statement as simply providing that "an earlier suit bars *the bringing of* a later suit while the earlier suit remains undecided but ceases to bar *the bringing of* that suit once it is dismissed." When read in this manner, this Court's holding regarding the temporal dynamics of the first-to-file rule is left undisturbed.

Our reading respects the statutory text underlying the first-to-file rule. That text does not purport to restrict the continuation of an FCA action while a related action is pending; rather, it restricts the "bring[ing]" of an FCA action while a related action is pending. 31 U.S.C. § 3730(b)(5). Presumably, the Supreme Court was aware of this textual detail in making the pronouncements that it did in *Carter III*.

In contrast, we cannot presume that the Supreme Court intended, with one ambiguous statement, to overrule this Court's conclusion as to the proper temporal reference point for a first-to-file inquiry.[5] This conclusion was never contested in the parties' briefing, and the Supreme Court did not present it as an issue before it in its opinion. The Supreme Court, moreover, expressed agreement with this Court's rejection of dismissal with prejudice in this case, and it did not qualify this expression of agreement with the significant caveat that it disagreed with this Court's instruction of dismissal without prejudice. For these reasons, we do not agree with Carter that the above-described statement in any way undermined this Court's initial first-to-file analysis.

Next, Carter tries to rely on the Supreme Court's statement that it "agree[s] with the Fourth Circuit that the dismissal with prejudice of [Carter's] one live claim was error." *Carter III*, 135 S.Ct. at 1979. Carter urges that the Supreme Court's decision to describe one of Carter's claims as "live" was a manner of signaling that that claim is unaffected by the first-to-file rule. We disagree. The lead-up to Carter's second-quoted statement confirms that the

Court was only using the description "live" to mean "not time-barred." *See id.* at 1978 (explaining that because "at least one claim [may be] timely on remand," the Court must "consider whether [Carter's] claims must be dismissed with prejudice under the first-to-file rule"). The statement itself belies the notion that "live" means not in violation of the first-to-file rule: The statement expresses unqualified agreement with this Court, which had just issued a decision that both applied the first-to-file rule to the Carter Action and called for dismissal without prejudice in lieu of dismissal with prejudice. *See Carter II*, 710 F.3d at 183.

Accordingly, the Supreme Court's decision in *Carter III* does not disturb our initial holding that the reference point for a first-to-file analysis is the set of facts in existence at the time that the action under review is commenced.

### B.

Having discussed how this Court decides whether the first-to-file rule has been violated, we now turn to analyzing the sanction for a first-to-file violation. Our precedent on this issue is clear: The first-to-file rule is designed to restrict the bringing of certain types of suits, so when a relator brings an FCA action to court in violation of the first-to-file rule, "the court must dismiss the action." *Carson*, 851 F.3d at 302.

A court's lack of discretion when it comes to sanctioning first-to-file violations was underscored in a recent Supreme Court decision. *See Rigsby*, 137 S.Ct. 436. In *Rigsby*, the Supreme Court considered whether a violation of the FCA provision

5. This conclusion, we add, was consistent with the conclusions of widespread, pre-*Carter III* circuit case law. *See, e.g., Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 972 n.5 (6th Cir. 2005); *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1279 (10th Cir. 2004); *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1188 (9th Cir. 2001).

mandating that relators file their complaints under seal could only be sanctioned with dismissal. *Id.* at 439–40. The Court held that the appropriate response to a seal violation was left to the discretion of the district court, in light of Congressional silence on the issue of how to sanction a seal violation. *Id.* at 442–444. In the course of reaching this holding, however, the Court contrasted the seal requirement with the first-to-file rule, which the Court described as one of "a number of [FCA] provisions that do require, in express terms, the dismissal of a relator's action." *Id.* at 442–43 (citing 31 U.S.C. § 3730(b)(5)). This reasoning by the Supreme Court confirms that the only appropriate response for a first-to-file rule violation is dismissal.

### C.

Carter takes issue with the policy implications of holding (i) that the first-to-file rule is violated when an FCA action is brought while a related action is pending (regardless of the eventual outcome of the latter action), and (ii) that a first-to-file violation must be sanctioned with dismissal. Carter asserts that these holdings would compel a court, sitting after the FCA's limitations period has run, to dismiss a relator's timely FCA action brought during the pendency of a then-pending, but since-dismissed, related action, and thereby expose the relator (if he or she sought to file a new complaint) to statute of limitations problems that the relator otherwise would not face. This arrangement, Carter contends, conflicts with the Supreme Court's apparent policy preference for interpretations of the FCA that facilitate government recoveries. *See Carter III*, 135 S.Ct. at 1979 (asking rhetorically, "Why would Congress want the abandonment of an earlier suit to bar a later potentially successful suit that might result in a large recovery for the Government?").

This policy argument offers no basis for disregarding the first-to-file rule's unambiguous statutory text. "Our job is to follow the text even if doing so will supposedly undercut a basic objective of the statute." *Baker Botts LLP. v. ASARCO LLC*, ─── U.S. ───, 135 S.Ct. 2158, 2169, 192 L.Ed.2d 208 (2015) (internal quotation marks omitted). The first-to-file rule's statutory text, as explained above, plainly bars the bringing of actions while related actions are pending, and affords courts no flexibility to accommodate an improperly-filed action when its earlier-filed counterpart ceases to be pending. We follow this text today, and decline to manufacture such flexibility, even if it may raise statute of limitations problems for certain FCA relators. *See Carter III*, 135 S.Ct. at 1979 ("The False Claims Act's *qui tam* provisions present many interpretive challenges, and it is beyond our ability in this case to make them operate together smoothly like a finely tuned machine.").

We hasten to add that although our holding may reduce the number of duplicative actions that can survive the FCA's limitations, this reduction should have no material effect on the Act's objective of ensuring that the government is put on notice of fraud. Such notice is already principally provided by first-filed actions. *See Carson*, 851 F.3d at 302–03 ("A belated 'relator who merely adds details to a previously exposed fraud does not help reduce fraud or return funds to the federal fisc, because once the government knows the essential facts of a fraudulent scheme, it has enough information to discover related frauds.' " (quoting *United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 378 (5th Cir. 2009))).

Finally, we note that KBR is not without policy arguments of its own. Were we to

hold that a statutorily-barred action (i.e., an action brought while a related action is pending) could be revived by an event occurring outside the FCA's limitations period (i.e., dismissal of the related action), we would be undermining an FCA defendant's interest in repose and avoiding stale claims outside the limitations period. *See Gabelli v. SEC*, 568 U.S. 442, 133 S.Ct. 1216, 1221, 185 L.Ed.2d 297 (2013) (describing the interests of defendants that are advanced by statutes of limitations). Congress could certainly have enacted a revival mechanism in the first-to-file rule statute notwithstanding repose and staleness concerns, but it has not done so, and we are not at liberty to create one.

### D.

With this understanding in mind, we reiterate the conclusion of our initial decision in this case. *See Carter II*, 710 F.3d at 183. Because Carter commenced the Carter Action while the Maryland and Texas Actions were still pending, he clearly "br[ought]" an "action" while factually related litigation remained pending, 31 U.S.C. § 3730(b)(5), and therefore violated the first-to-file rule. The subsequent dismissals of the Maryland and Texas Actions do not alter the fact that Carter brought the Carter Action while factually related litigation remained pending, and those dismissals therefore do not cure the Carter Action's first-to-file defect.

Because the Carter Action violated the first-to-file rule, and because the only remedy for such a violation is dismissal, the district court was correct to dismiss the Carter Action.

### IV.

Carter argues that even if the dismissals of the Maryland and Texas Actions did not automatically cure the Carter Action's first-to-file defect, his subsequent, Rule 15(a)-based proposed amendment to his Carter Action complaint would have done so. The district court rejected this argument, and consequently denied Carter's proposed amendment. We affirm.

Rather than address any matters potentially relevant to the first-to-file rule, such as the dismissals of the Maryland and Texas Actions, the proposed amendment simply adds detail to Carter's damages theories.[6] As such, we see no reason why that proposal would have cured the first-to-file defect in the Carter Action. Therefore, Carter's proposed amendment was properly denied.[7]

### V.

Finally, Carter contests the district court's denial of his Rule 59(e)-based motion for reconsideration. Finding no error in the district court's denial, we affirm.

"Rule 59(e) motions can be successful in only three situations: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007) (inter-

---

**6.** Although Carter and his counsel referenced the dismissals of the Maryland and Texas Actions in their briefing and during oral arguments, these references do not rise to the level of proposed revisions to a complaint. *See S. Walk at Broadlands Homeowners Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaint through briefing or oral advocacy.").

**7.** Because we need not do so, we decline to comment on the other reasons the district court identified as justifying its rejection of Carter's effort to circumvent dismissal through amendment.

nal quotation marks omitted). Carter contends that the first and third bases for reconsideration are implicated in this case. This contention does not withstand scrutiny.

With respect to the first basis for reconsideration, Carter claims that the 2015 *Gadbois* decision—where the First Circuit held that an FCA action's first-to-file defect can be cured by a Rule 15(d) supplement clarifying that an earlier-filed, related action that gave rise to the defect has been dismissed—constitutes an intervening change in controlling law. *See Gadbois,* 809 F.3d at 4–6. We disagree for two reasons.

First, as an out-of-circuit decision, *Gadbois* cannot constitute controlling law in this Circuit. *See McBurney v. Young,* 667 F.3d 454, 465 (4th Cir. 2012).

Second, *Gadbois* is factually distinguishable. *Gadbois* only addressed a situation where the relator sought to revise an FCA complaint with information pertaining to the related action that gave rise to the first-to-file defect. Carter's situation is different, because his proposed revision makes no mention of the related Maryland and Texas Actions. Thus, assuming for the sake of argument that *Gadbois* was correctly decided,[8] it provides Carter no support.

With respect to the third basis for reconsideration, Carter argues that the district court's decision to dismiss the Carter Action and to deny his proposed amendment was clearly erroneous and manifestly unjust. Having concluded that the above-described decision was correct, we cannot agree with Carter's argument.

Simply put, Carter was ineligible for relief on a motion for reconsideration, and thus the district court did not err in denying him such relief.

## VI.

This Court fully supports the FCA's noble goal of protecting the government's funds and property against fraud. At the same time, we must adhere to the statutory provisions and limitations that Congress put into place in pursuit of that goal. We do so in this case by holding that because the Carter Action violated the FCA's first-to-file rule in a manner not cured by subsequent developments, the action must be dismissed. The district court's judgments comport with this holding, and they are therefore

*AFFIRMED.*

WYNN, Circuit Judge, concurring:

The False Claims Act's "first-to-file" bar provides that "[w]hen a person brings an action under [the False Claims Act], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). The district court dismissed relator Benjamin Carter's ("Relator") False Claims Act complaint against Defendant Halliburton Co., and several of its subsidiaries, on grounds that at least two "related" actions were "pending" at the time Relator filed his original complaint. Following dismissal of all earlier-filed, related actions, Relator sought leave to amend his complaint to avoid preclusion under the first-to-file bar. Relator's

---

**8.** *But see United States v. Medco Health Solutions, Inc.,* No. 11-684-RGA, 2017 WL 63006, at *12 (D. Del. Jan. 5, 2017) (arguing that *Gadbois* "failed to 'give sufficient weight to the plain language' of the first-to-file bar") (quoting *Carter VI,* 315 F.R.D. at 60); *United*

*States ex rel. Soodavar v. Unisys Corp.,* 178 F.Supp.3d 358, 373–74 (E.D. Va. 2016) (arguing that *Gadbois* conflicts with the first-to-file rule's purpose of foreclosing duplicative *qui tam* actions).

proposed amendment, however, did not reference, in any way, the first-to-file bar or the dismissal of the two earlier-filed, related actions. The district court denied Relator leave to amend on grounds of futility, holding *as a matter of law* that a relator cannot cure a first-to-file defect by amending or supplementing his complaint after dismissal of all earlier-filed, related actions.

I agree with the majority opinion's conclusion that the dismissal of all earlier-filed, related actions does not, by operation of law, lift the first-to-file bar on a later-filed action. The majority opinion further concludes that the district court did not abuse its discretion in denying Relator leave to amend. I write separately to emphasize the narrow scope of that conclusion. In particular, the majority opinion finds that the district court did not reversibly err in denying Relator leave to amend *solely* on grounds that his proposed amendment did not "address any matters potentially relevant to the first-to-file rule, such as the dismissals of the [earlier-filed, related actions]." *Ante* at 210. To that end, the majority opinion does not address, much less adopt, the district court's reasoning that an amendment or supplement to a complaint cannot, as a matter of law, cure a first-to-file defect, *id.* at 211 n.8—a question that has divided district courts in this circuit and around the country, *see United States ex rel. Wood v. Allergan, Inc.*, No. 10-CV-5645, 246 F.Supp.3d 772, 792, 2017 WL 1233991, at *10 (S.D.N.Y. Mar. 31, 2017) (collecting cases). Likewise, the majority opinion does not address whether the district court's rule categorically barring a relator from supplementing a complaint to cure a first-to-file defect is consistent with this Court's decision in *Feldman v. Law Enforcement Associates Corp.*, 752 F.3d 339, 347 (4th Cir. 2014), which held that "even when [a] District Court lacks jurisdiction over a claim at the time of its original filing, a supplemental complaint may cure the defect by alleging the subsequent fact which eliminates the jurisdictional bar." Rather than resolving those questions, the majority opinion simply holds that a proposed amendment or supplement to a complaint cannot cure a first-to-file defect when the amendment or supplement does not reference the dismissal of publicly disclosed, earlier-filed related actions.