# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

THE STATE OF DELAWARE,      )
               Plaintiff, *ex rel.*  )
                           )
RUSSELL S. ROGERS        )
           Plaintiff-Relator,  )
                           )    **C.A. No. N18C-09-240**
   v.                     )         **PRW CCLD**
                           )
THE BANCORP BANK;      )
INTERACTIVE COMMUNICATIONS  )
INTERNATIONAL, INC.; and    )
INCOMM FINANCIAL SERVICES, INC.  )
              Defendants.  )

Submitted:  January 7, 2022
Decided:  February 18, 2022

## OPINION AND ORDER

*Upon Defendants' Motion to Amend the Case Management Order,*
**DENIED.**

Oliver J. Cleary, Esquire, Daniel C. Mulveny, Esquire, Deputy Attorneys General, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware, *Attorneys for Plaintiff State of Delaware.*

Bruce E. Jameson, Esquire, Samuel L. Closic, Esquire, Mary S. Thomas, Esquire, PRICKETT, JONES & ELLIOT, P.A., Wilmington, Delaware; David Brackett, Esquire, Of Counsel (*pro hac vice*), Benjamin E. Fox, Esquire, Of Counsel (*pro hac vice*), John E. Floyd, Esquire, Of Counsel (*pro hac vice*), BONDURANT, MIXON & ELMORE, LLP, Atlanta, Georgia, *Attorneys for Plaintiff-Relator Russell S. Rogers.*

Catherine A. Gaul, Esquire, Randall J. Teti, Esquire, ASHBY & GEDDES, P.A., Wilmington, Delaware; Joshua A. Goldberg, Esquire, Of Counsel (*pro hac vice*), Jane Metcalf, Esquire, Of Counsel (*pro hac vice*), Clinton W. Morrison, Esquire, Of Counsel (*pro hac vice*), Christina Seda-Acosta, Esquire, Of Counsel (*pro hac vice*), PATTERSON BELKNAP WEBB & TYLER LLP, New York, New York, *Attorneys for Defendants Interactive Communications International, Inc. and InComm Financial Services, Inc.*

Jody C. Barillare, Esquire, MORGAN, LEWIS & BOCKIUS LLP, Wilmington, Delaware; Eric W. Sitarchuk, Of Counsel (*pro hac vice*), Esquire, Ezra D. Church, Esquire, Of Counsel (*pro hac vice*), Ryan P. McCarthy, Esquire, Of Counsel (*pro hac vice*), Lily G. Becker, Esquire, Of Counsel (*pro hac vice*), Bradie R. Williams, Esquire, Of Counsel (*pro hac vice*), Neaha P. Raol, Esquire, Of Counsel (*pro hac vice*), MORGAN, LEWIS & BOCKIUS LLP, Philadelphia, Pennsylvania, *Attorneys for Defendant The Bancorp Bank.*

**WALLACE, J.**

The Court here resolves Defendants Bancorp Bank, InComm Financial Services, Inc., and Interactive Communications International, Inc.'s Motion to Amend the Case Management Order to Supplement Phase One Motion Practice ("Motion to Amend"), claiming, *inter alia*, that the State's failure to conduct an adequate investigation of the Relator's allegations before intervening might entitle them to a grant of dismissal or summary judgment. For the reasons set forth below, that motion is **DENIED**.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

This is a Delaware False Claims and Reporting Act ("DFCRA") action that arises out of the Bancorp Bank's issuance of Prepaid Vanilla Cards.[1] The State of Delaware and Mr. Rogers ("Relator") allege that Bancorp deliberately failed to report and escheat abandoned prepaid card balances to the State of Delaware in an amount totaling over $100 million.[2] The State claims that Defendants Bancorp Bank, InComm Financial Services, Inc. ("IFS"), and Interactive Communications International, Inc. ("ICI" and, together with IFS, "InComm") (collectively, "Defendants") conspired to defraud Delaware by executing contract provisions designed to mislead the State Escheator regarding who "holds" those balances.[3]

---

[1]  Public Redacted Compl. ¶¶ 11-13, Oct. 11, 2019 (D.I. 97).

[2]  *Id.* ¶ 2.

[3]  *Id.* ¶ 4.

Following its investigation,[4] the Delaware Department of Justice, invoking the provisions of 6 *Del. C.* § 1203, elected to intervene in this action for the State of Delaware as the real party in interest.[5] The Complaint alleges Defendants violated two DFCRA provisions—6 *Del. C.* §§ 1201(a)(7) and 1201(a)(3)—that respectively set out the statute's prohibitions on "reverse false claims" and conspiracies to violate the statute.[6] Defendants were served with the Complaint and filed pre-answer motions to dismiss.[7] Those were denied.[8]

In its June 2020 Case Management Order ("CMO"), the Court bifurcated discovery into two phases.[9] Phase One limits fact discovery to three threshold issues: "(a) whether Bancorp is the ultimate debtor of the relevant property under federal common law, such that the Delaware Unclaimed Property Law ("DUPL")

---

[4]  *See* State of Delaware's Mot. to Intervene, at 1, May 3, 2019 (D.I. 20) (incanting 6 *Del. C.* § 1203(b), averring that the Delaware Department of Justice "ha[d] conducted a substantial and substantive investigation into the allegations and legal contentions made," and requesting "leave to intervene and proceed with all Counts of the Complaint in this action"); Defs.' Mot. for Relief under Rule 54, Ex. B. at 18-19 (State's Objections and Responses to InComm Defs.' First Set of Interrogatories), Aug. 6, 2020 (D.I. 156) ("The State responds that it reviewed the Complaint and the other materials provided by Relator. Any further information sought by this interrogatory is protected from discovery by one or more of the privileges asserted.").

[5]  State of Delaware's Mot. to Intervene (D.I. 20).

[6]  Public Redacted Compl. ¶¶ 2-4.

[7]  Mots. to Dismiss, July 29, 2019 (D.I. 75, D.I. 77).

[8]  Judicial Action Form, Feb. 12, 2020 (D.I. 118).

[9]  Case Management Order at 3-4, June 16, 2020 (D.I. 146) (hereinafter "CMO").

may be applicable to that property; (b) whether Plaintiffs' claims under the Delaware False Claims and Reporting Act ("DFCRA") are precluded or preempted by operation of the DUPL; and (c) whether Plaintiffs' DFCRA claims are barred by operation of an administrative proceeding under 6 *Del. C.* § 1206(a)."[10] At the conclusion of Phase One, the CMO allows the Defendants to move for summary judgment on any or all of those three threshold questions.[11]

In June 2020, during the course of Phase One discovery, Defendants learned that, following his November 2018 termination from InComm, Relator gave his counsel his company laptop. That laptop, the parties agree, contained privileged materials and work product.[12] Relator's counsel then made a forensic copy of the laptop's entire hard drive and loaded the laptop documents to counsel's own document review platform.[13] Between November 2018 and January 2019, Relator's counsel reviewed no less than 850 documents from the InComm laptop.[14] In January 2019, Relator provided the State with 108 of those documents.[15]

---

[10]  *Id*. at 3.

[11]  *Id*. at 3-4.

[12]  InComm Defs.' Mot. for Relief re: Relator's Counsel's Improper Possession and Review of Privileged Materials at 1, 5-6, Oct. 23, 2020 (D.I. 180).

[13]  *Id*. at 5.

[14]  *Id*. at 8.

[15]  *Id*.

A Special Master was appointed in December 2020 to facilitate the ongoing discovery issues regarding Relator's counsel's possession and review of the contents of the InComm-owned laptop.[16] While this was ongoing, the Defendants sought to amend the CMO "to permit motion practice in Phase One on the issue of whether the State complied with Section 1203(b)(2) of the DFCRA."[17] The State opposed the proposed amendment[18] and requested a stay of deposition discovery pending the Special Master's findings and conclusions related to the potentially privileged documents reviewed by Relator's counsel.[19]

The Defendants agreed that a stay of discovery was warranted.[20] But because the Defendants anticipated filing a motion to disqualify certain of Relator's counsel and other associated individuals involved in the discovery of the sensitive documents maintained on the InComm-owned laptop, the Defendants asked for a stay of *all* discovery.[21]

---

[16] Order of Reference to Special Master, Dec. 18, 2020 (D.I. 201).

[17] Defs.' Mot. to Amend the CMO to Suppl. Phase One Mot. Practice, ¶ 17, Feb. 10, 2021 (D.I. 203).

[18] Pls.' Answering Br. in Opp'n to Defs.' Mot. to Amend the CMO to Suppl. Phase One Mot. Practice, Feb. 17, 2021 (D.I. 204).

[19] State's Letter Requesting Stay, May 17, 2021 (D.I. 232).

[20] Defs.' Letter Resp. to State's Req. to Stay Dep. Disc., May 19, 2021 (D.I. 237).

[21] *See id.*

The Court stayed all discovery and other deadlines outlined in the CMO pending resolution of InComm's imminent disqualification motion that was awaiting the filing of the Special Master's Report.[22] The Special Master's Final Report has now been docketed.[23] InComm has now filed its long-expected motion for disqualification and reimbursement.[24] And that motion is now being briefed with an imminent argument date set.

Upon resolution of InComm's disqualification motion, the parties are to confer regarding resumption of discovery and to propose a schedule for completing Phase One discovery.[25] Whatever the eventual resolution of Defendants' disqualification motion, the merits of its pending motion to amend the CMO are now ripe and disposition of such is now prudent.

---

[22] Order Staying Disc. and Modifying Case Schedule, June 1, 2021 (D.I. 238).

[23] Special Master's Confidential Final Report, Jan. 7, 2022 (D.I. 245). *See* D.I. 246 for the Public Redacted version.

[24] D.I. 248. Defendant Bancorp Bank joined in the motion. *See* Bancorp's Joinder of Incomm's Mot. for Disqualification, Jan 21, 2022 (D.I. 249).

[25] Order Staying Disc. ¶ 4.

## II. THE PARTIES' CONTENTIONS

### A. THE DEFENDANTS' MOTION TO AMEND THE CASE MANAGEMENT ORDER.

The Defendants ask the Court to allow an amendment of the June 2020 CMO to add a fourth threshold issue for discovery and potential summary judgment: "whether the State of Delaware failed to conduct an adequate investigation into Relator's allegations prior to intervening, in violation of the DFCRA."[26] The Defendants say they have reason to believe that the State did not review relevant materials from the Delaware State Escheator's Office prior to intervening, but rather the Department of Justice decided to intervene and proceed with the action based on "a hand-picked array of 108 documents supplied by Relator's counsel."[27]

These 108 documents came from the hard drive of the previously-mentioned InComm-owned laptop that, in the Defendants' view, was improperly appropriated by Relator upon his termination from InComm.[28] According to the Defendants, had the State further inquired about the materials in Relator's possession, it would have discovered that the laptop contained thousands of other documents that would have

---

[26] Defs.' Mot. to Amend CMO at ¶ 1, Feb. 10, 2021 (D.I. 203).

[27] *Id*. ¶ 2.

[28] *Id*.

refuted the Complaint's allegations.[29]   These documents, according to the

Defendants, include:[30]

- Diagrams of the funding flows for several of InComm's Vanilla cards, detailing the "derecognition method" of recognizing revenue. Although Relator had falsely alleged that these derecognition payments were "sham" transfers "to expropriate" cardholder funds from the State (Compl. ¶ 57), the diagrams show that the payments are realized by InComm Financial Services, a South Dakota entity, as revenue.

- Documents reflecting InComm's responsibility to fund a "reserve balance" for cardholder liabilities—belying the allegation that Bancorp, as opposed to InComm, "is responsible to cardholders for all unredeemed balances" (Compl. ¶ 25).

- Letters from InComm to cardholders whose cards had been used fraudulently, informing the cardholders that ***InComm*** had refunded them for the shortfalls in their cardholder accounts—again demonstrating InComm's financial responsibility for funding the cardholder balances.

The Defendants contend that the DFCRA's language requires the State to

conduct its own independent investigation of a case and when it fails to live up to

that obligation, the Court is empowered to remedy such a violation as it sees fit.[31]

Their argument is as follows:  because the legislature didn't speak to the scope of a

---

[29]   *Id.*

[30]   *Id.* ¶ 7.

[31]   *Id.* ¶¶ 10, 11 (relying on this Court's decision in *State ex rel. French v. Card Compliant, LLC*, 2018 WL 4183714, at *8-9 (Del. Super. Ct. Apr. 30, 2018) and the United States Supreme Court's holding in *State Farm Fire and Cas. Co. v. United States ex rel. Rigsby*, 137 S. Ct. 436, 444 (2016)).

§ 1203(b)(2) investigation by the Department of Justice or a remedy for any of its alleged investigative shortcomings, the Court must have the sound discretion to measure the Department's efforts pretrial and dismiss a DFRCA case if—again, in the Court's discretionary view—the Department failed to adequately investigate before intervening.[32] The Defendants argue that similar to *United States ex rel. Rigsby*, the statute here requires the State to honor its investigation obligation prior to intervention, yet it is silent on the remedy for a violation of that rule.[33] Accordingly, the Defendants insist that it is within the Court's discretion to dismiss the action if it finds that the State failed to conduct proper investigation into Relator's claim.[34]

Says the Defendants, discovery thus far has raised serious doubts as to whether the Department of Justice fulfilled its "shall diligently investigate" obligation under the statute.[35] Namely, they claim that the Department did not seek any information from any of the named defendants, reviewed none of the documents from the State Escheator's Office, and "most egregiously" relied on misappropriated

---

[32] *Id.* ¶ 11 (citing *United States ex rel. Rigsby*, 137 S. Ct. at 442). *See also id.* ¶ 12 (citing certain federal district court cases dismissing specific portions of DFCRA claims).

[33] *Id.* ¶ 13.

[34] *Id.*

[35] *See* DEL. CODE ANN. tit. 6, § 1203(a) (2019).

documents that Relator's Counsel provided without further inquiry.[36] Accordingly, the Defendants argue that the resolution of this scope-of-investigation issue could be case dispositive, and thus would be more appropriately decided at Phase One of the case to promote judicial efficiency and preservation of resources.[37]

### B. THE PLAINTIFFS' OPPOSITION TO AMENDING THE CMO.

The Plaintiffs say the Defendants' Motion to Amend fails to meet the "good cause shown" standard required to modify a CMO.[38] According to the Plaintiffs, "good cause" requires the Defendants to show that: (1) they have been diligent; (2) the reason for the requested amendment was neither foreseeable nor the Defendants' fault; and (3) the denial of the Motion to Amend would create a substantial risk of unfairness to Defendants that outweighs any risk of unfairness to the Plaintiffs.[39]

The Plaintiffs mention that this Court has held the State's investigation requirement "is best viewed as a pleading requirement[,]" and while the Defendants have already twice moved to dismiss the Complaint for defective pleading, those

---

[36] Defs.' Mot. to Amend CMO at ¶ 14.

[37] *Id*. ¶ 15.

[38] Plfs.' Opp'n to Defs.' Mot. to Amend at 3, Feb. 17, 2021 (D.I. 204).

[39] *Id*. (citing *In re Asbestos Litig.*, 228 A.3d 676, 681-82 (Del. 2020)).

motions never included this "failure to investigate" issue.[40]  The Plaintiffs point out that the Defendants have raised or alluded to this "failure to investigate" issue twice: first, in their April 2020 Answer as an affirmative defense; and again, in their later-filed reply brief supporting their Rule 54(b) motion.[41]  Yet, as the Plaintiffs highlight, the Defendants fail to explain why they waited until February 2021 to seek amendment of the June 2020 CMO to explore this § 1203(b) issue.[42]  Any protestation by the Defendants that they were only recently made aware of this issue through discovery is inconsistent with their prior pleadings, say the Plaintiffs.[43]  And resultingly, the Plaintiffs insist, the Defendants' lack of diligence in pursuing this lack-of-investigation claim earlier precludes a finding of good cause.[44]

Even if the Defendants were allowed to amend the CMO, the Plaintiffs declare their contemplated motion for summary judgment would be "dead on arrival" for four reasons.[45]  First, the Plaintiffs argue that the Defendants fail to explain how § 1203(b)(2) gives them standing to seek dismissal of the Complaint.[46]

---

[40]  *Id.* (citing *Card Compliant*, 2018 WL 4183714, at *9).

[41]  *Id.* at 4.

[42]  *Id.*

[43]  *Id.*

[44]  *Id.* at 5.

[45]  *Id.*

[46]  *Id.* at 5-6.

Second, the Plaintiffs point out that this Court held in *Card Complaint* that questions concerning the adequacy of the State's investigation are "neither an issue of fact for jury determination, nor a basis for summary judgment,"[47] yet the Defendants have not explained why this holding is incorrect or that a different result is required here.[48]

Third, the Plaintiffs suggest the facts already developed prove that the § 1203(b)(2) requirements have been met, so any summary judgment motion would fail.[49] The Plaintiffs contend that the statute required Mr. Rogers to send his Complaint and "substantially all material evidence and information" he possessed to the Department of Justice, which he did.[50] The statute also requires the Department "conduct an investigation of the factual allegations and legal contentions made in the complaint," which the State certifies it did.[51]

Fourth, the Plaintiffs intimate that because the Defendants know that the Department of Justice conducted an investigation, the true motivation behind the Defendants' current motion is to create a factual dispute that would require the State

---

[47] *Card Complaint*, 2018 WL 4183714, at *9.

[48] Plfs.' Opp'n to Defs.' Mot. to Amend at 6-7.

[49] *Id*. at 7.

[50] *Id*.

[51] *Id.*

to reveal confidential information about the Department's investigation, deliberations, and communications.[52]

In sum, the Plaintiffs insist that there is no good cause for the Court to grant the amendment and allow the Defendants to champion another defective motion.[53]

## III. DISCUSSION

Section 1203(b) of Title 6 incorporates a pleading requirement that the State has satisfied. And even where the State might fail to satisfy that particular pleading requirement, no statute or rule allows substantive merits-based dismissal on those grounds. So amending the CMO would be futile; Defendants would never be entitled to the relief they want because the Department of Justice's § 1203-investigation obligation is not a substantive DFCRA-claim element whose absence could support summary judgment in their favor. Were the Court to accept Defendants' read of § 1203, mischief would surely follow.

### A. SECTION 1203(a)'S "SHALL DILIGENTLY INVESTIGATE" AND SECTION 1203(b)'S "SHALL CONDUCT AN INVESTIGATION" SUGGEST CERTAIN PLEADING REQUIREMENTS IN DFCRA ACTIONS.

Section 1203(a) of Title 6 provides that the Department of Justice "shall diligently investigate suspected violations" of the DFCRA.[54] That is a duty the

---

[52]   *Id*. at 8.

[53]   *Id*. at 10.

[54]   DEL. CODE ANN. tit. 6, § 1203(a) (2021) ("The Attorney General shall diligently investigate suspected violations under this chapter."); *see generally id*. at tit. 29, §§ 2503-04 (as a general

-12-

Department owes the public. The statute does not then define what "diligently investigate" requires. But, no doubt the Department's statutory obligation to investigate—and aver in the State's entry papers that it has done so—creates, in a DFCRA suit, at most a pleading requirement, not substantive issue subject to further inquiry and challenge via involuntary termination of a claim.[55]

Together with § 1203(b) the Department of Justice is empowered and charged to investigate self- or relator-initiated DFCRA claims and bring civil actions against those who violate the Act.[56] Nowhere in that language though does § 1203 require that or set standards for some "own independent investigation" of claims to be conducted by the Department[57]—no matter who the initiator might be.

So what does the Court mean when it says that, for a DFCRA action filed here, the State's DFCRA-investigation obligation is a pleading issue?

By denoting the statute's investigation obligation as a pleading requirement, the Court recognizes that the Department must aver that it has satisfied its statutory

matter when a Delaware statute refers to or designates the "Attorney General," such reference or designation includes those duly appointed by the Attorney General and the Department of Justice as a whole).

[55] *Card Compliant*, 2018 WL 4183714, at *9.

[56] DEL. CODE ANN. tit. 6, § 1203(a) (2021).

[57] Defs.' Mot. to Amend CMO at ¶ 10. While the Defendants state that "the Department of Justice [is required] to conduct its own independent investigation" it provides little to explain what an "independent" investigation is in this context, or where the DFCRA statute or interpretive case law requires such. *Id.*

obligation under the applicable provision of § 1203. By doing so in its § 1203(b) papers, the Department confirms to the Court and the other parties that it has carried out the statutory duty owed to a Relator—to earnestly investigate that Relator's claims. If the State fails to make such an averment in its coopted complaint or accompanying pleadings, then such pleading failure might give the Court cause to dismiss the action.[58]

Case law on this precise issue is scarce. But the DFCRA is modeled after the Federal False Claims Act ("FCA"),[59] so a look at how federal courts have resolved like situations is of some assistance.[60]

---

[58] Granted, this Court should have been more precise in *Card Compliant* to explain that a Rule 12-type attack for exclusion of this necessary pleading requirement is the only vehicle and basis for potential dismissal in a § 1203(b) action where the Department of Justice elects to intervene and proceed with a DFCRA action but fails to certify—upon formal entry into the fray—that it first "investigat[ed] [ ] the factual allegations and legal contentions made in the [relator's] complaint." *See Card Compliant*, 2018 WL 4183714, at *9 ("Moreover, even assuming that the State had failed to meet DFCRA's statutory investigation requirement, it is within the Court's discretion as to whether it is appropriate to dismiss the case on that basis. In the Court's view, dismissal is not warranted. And dismissal is the only potential relief for such a statutory violation of what is best viewed as a pleading requirement. That alleged failure is neither an issue of fact for jury determination, nor a basis for summary judgment. Rule 56 relief thereon is denied with respect to all remaining Defendants.") (internal citation omitted). This opinion, hopefully, clears up any confusion on the matter.

The Court should also note that, in the extreme, failures by State's counsel in this regard might be addressed just as they would in any other civil action. *See* Del. Super. Ct. Civ. R. 11(c) (authorizing sanctions against attorneys and parties for certain types of misconduct in civil litigation).

[59] *See* 31 U.S.C. § 3730(a).

[60] "Because the DFCRA is modeled after the federal False Claims Act ("FCA"), the Court looks to federal case law for guidance in interpreting the DFCRA." *State ex rel. French v. CVS Health Corp.*, 2019 WL 4668353, at *8 n.52 (Del. Super. Ct. Sept. 24, 2019); *State ex rel. French v. Card Compliant, LLC*, 2015 WL 11051006, at *6 (Del. Super. Ct. Nov. 23, 2015) ("Delaware authority

In *United States v. Pecore*,[61] the Seventh Circuit affirmed a district court's denial of the prevailing defendants' motion for attorney's fees.[62] There, the United States initiated an FCA suit against the defendants for misreporting and diverting funding under the Hazardous Fuels Reduction program.[63] After a nine-day trial, the defendants prevailed and filed for attorney's fees under the Equal Access to Justice Act ("EAJA") and alternatively for sanctions under Federal Civil Rule 37.[64] Relevant here, the *Pecore* defendants sought attorney's fees based on the government's purported lack of substantial justification to bring the action due to its purported lack of an adequate investigation.[65] The *Pecore* defendants argued that the government failed to properly investigate its FCA claim thus violating 31 U.S.C. § 3730(a)—which requires the Attorney General to "diligently investigate" the false claims violation asserted.[66] According to the *Pecore*

---

interpreting the DFCRA is scant. Since the DFCRA is modeled after the federal False Claims Act, the court will look to federal case law for guidance."); *State ex rel. Higgins v. SourceGas, LLC*, 2012 WL 1721783, at *4 (Del. Super. Ct. May 15, 2012) ("[T]here is a dearth of Delaware authority interpreting the DFCRA. Because the DFCRA is modeled after the federal False Claims Act ("FCA"), the Court will look to . . . federal case law, for guidance in interpreting the DFCRA.").

[61]   664 F.3d 1125, 1136 (7th Cir. 2011).

[62]   *Id.* at 1136.

[63]   *Id.* at 1128-29.

[64]   *Id.* at 1130.

[65]   *Id.* at 1131.

[66]   *Id.* at 1135.

defendants, this failure stemmed from the government's reliance on its witness's "stale" inspection reports rather than their experts' reports exculpating the defendants' wrongdoings.[67] In rejecting this claim and affirming the lower court, the Seventh Circuit found that the government did not "completely abdicate its duty to diligently investigate its claims,"[68] so no attorney's fees were due defendants.

*Pecore*, while not identical, does offer some insight as to what is required of a State's investigation when it's statutorily obliged. And while the electorate might rightly expect and demand far more of its prosecuting agencies, anything beyond "complete abdication" likely satisfies a State's statute-imposed obligation to investigate.

So as civil prosecutor, the Department of Justice might of its own discretion—albeit perhaps to the eventual peril of its own cause—rely on certain limited information and eschew a more searching inquiry before commencing or joining a legal action. Sound executive policy counsels that it probably shouldn't because such course might lead to ill-advised pursuits of claims that will fail to hold up under

---

[67] *Id.*

[68] *Id.* at 1136 (The Seventh Circuit here echoed certain language from *Phil Smidt & Sons, Inc. v. NLRB* case, where it reprimanded the government in a labor relations case for failing to make "*any* attempt to independently corroborate [its] allegations." 810 F.2d 638, 643 (7th Cir. 1987) (emphasis added). Notably, *Phil Smidt* wasn't an FCA claim case. Rather, fees and costs were awarded to the prevailing *Phil Smidt* petitioner under the EAJA because "[i]n EAJA litigation of this type, the NLRB's General Counsel bears the burden of proving that his position in the backpay proceeding was substantially justified." *Id.* at 641.).

later scrutiny.  But the remedy for such senselessness is ultimate failure on the merits before a judge or jury, not early pretrial termination of those doomed claims.

Now, nothing suggests the Department of Justice in any way completely abdicated its obligation to investigate Relator's claims prior to the State's intervention in this action.  According to the Department, it elected to intervene here after review of the Complaint and other materials provided by Relator.[69]  And, insists the Department, its inquiry didn't end there.  But, says the Department, that is all the information it is able and should have to—in this context—disclose regarding its investigation so as to not divulge privileged or protected materials.[70]

On this, the State's right.  The Department of Justice was required only to aver in its initiating papers that it had "investigated" as required under § 1203.[71]  Those

---

[69]  Defs.' Mot. for Relief under Rule 54, Ex. B. at 18 ("[T]he State responds that it reviewed the Complaint and the other materials provided by Relator.").

[70]  *Id.* at 18-19 ("Any further information sought by this interrogatory is protected from discovery by one or more of the privileges asserted."). *See also* Plfs.' Br. in Opp'n. to Defs.' Mot. for Relief under Rule 54 at 5 n.9, Sept. 3, 2020 (D.I. 164):

> In asserting that the State "admitt[ed] that its investigation was limited to 'review[ing] the Complaint and other materials provided by Relator,'" Defendants grossly and improperly mischaracterize the State's investigation and its discovery response. Rule 54(b) Motion at 18 (quoting Ex. B (State's July 1, 2020 Resp. to InComm Interrogatories). Defendants' cherry-picked quote ignores the context provided by the very next sentence of the State's response: "Any further information sought by this interrogatory is protected from discovery by one or more of the privileges asserted." Ex. B at 18. *In other words, there was more to the State's investigation.* (emphasis added).

[71]  And to do so mindful of the Attorney General and her deputies' responsibilities under this Court's rules. *E.g.* Del. Super. Ct. Civ. R. 11(b) (setting out the inherent certifications an attorney executes when making any form of representation to this Court).

statutory provisions afford no bases for the Court or opponents to examine further into the breadth, depth, and quality of the Department's investigation with the idea being that the Court could dismiss the State's claims on the sole basis of some contrived standard as to what that investigation must entail. There just is no failure-to-adequately-investigate cause for dismissal baked into DFCRA actions. And the Court should be wary to ever allow DFCRA Defendants to goad some greater scrutiny into pre-initiation or pre-intervention investigation animated by a misguided notion that the Court could dismiss if unsatisfied with the Department's efforts.

## B. FEDERAL PRECEDENT CITING PRIOR VERSIONS OF THE DFCRA DOES NOT SUPPORT DISMISSAL OR SUMMARY JUDGMENT HERE.

All that said, the Defendants posit two federal district court cases as supporting their suggestion that the Court could dismiss a DFCRA claim upon a finding that the State failed to investigate.[72] But those two cases, to the extent they are helpful at all, serve only as examples of the limited pleading-requirement function such statutory language introduces into relator-initiated actions.

In *United States ex rel. Streck v. Bristol-Myers Squibb Co.*, the federal district court applied a previous version of 6 *Del. C.* § 1203(b)[73]—a version the federal court

---

[72] Defs.' Mot. to Amend CMO at ¶ 12.

[73] *See* DEL. CODE ANN. tit. 6, § 1203(b)(2) (2000) (requiring certain written determinations by the Delaware Attorney General to support a DFCRA claim). In 2009, the Delaware General Assembly removed the operative requirement at issue in that federal case. *See* 77 DEL. LAWS 2009, ch. 166, §§ 7-12 (eff. July 16, 2009). Indeed, the courts in both of the Defendants' cited federal cases apply—as they were constrained to—Section 1203's pre-2009 provisions.

acknowledged had by then been abandoned.[74] The pre-2009 DFCRA expressly required that the Delaware Attorney General "shall make a written determination of whether there is substantial evidence that a violation of this chapter has occurred, and shall provide the affected person, entity or organization, and the Government, with a copy of the determination."[75] So the district court dismissed the pre-2009 DFCRA claims in that case because the pre-2009 language required a written determination that had not been provided by the *Streck* plaintiffs to support those certain pre-2009 portions of their complaint.[76]

Basically, the same result was had in *United States ex rel. Streck v. Allergan, Inc.*, for the same reason.[77] And so there the federal court observed that certain of the plaintiff's pre-2009 DFCRA-based claims "[could] not proceed as pleaded."[78]

The Defendants are correct that these cases support the conception that a court *might* dismiss a DFCRA claim for a procedural failure to comply with a pleading requirement derived from the statute. But those holdings are far from suggestive of some discretion the Court could educe to autopsy the State's pre-initiation

---

[74] *United States ex rel. Streck v. Bristol-Myers Squibb Co.*, 2018 WL 6300578, at *19 (E.D. Pa. Nov. 29, 2018).

[75] DEL. CODE ANN. tit. 6, § 1203(b)(2) (2000).

[76] *Bristol-Myers Squibb Co.*, 2018 WL 6300578, at *19.

[77] *United States ex rel. Streck v. Allergan, Inc.*, 894 F. Supp. 2d 584, 603 (E.D. Pa. 2012).

[78] *Id.*

investigation; and they certainly don't recognize any grant of power to dismiss the State's claims if the Court is dissatisfied with the caliber of that investigation.

Current Delaware law does *not* mandate a written investigatory statement be issued to support a DFCRA claim. So, unlike the federal defendants above, the Defendants here have no clear statutory violation to hold up. Instead, these DFCRA Defendants seek license to quibble over the scope and intensity of the State's pre-intervention investigation. That license, the Court will not grant.

## IV. CONCLUSION

Amending the CMO as the Defendants propose could in no way lead to the dispositive relief they're after. The Defendants' purported deficient-investigation claim is simply incognizable as a substantive matter that might gain summary pretrial termination of the State's false claims charges.[79] Again, whether the Department of Justice's "conduct [of its] investigation of the factual allegations and legal contentions made in [Mr. Rogers'] complaint" before "elect[ing] to intervene and proceed with the actions"[80] was adequate is "neither an issue of fact for jury determination, nor a basis for summary judgment."[81] And again, the remedy for any failings visited by any purported investigative inadequacy will be meted out via

---

[79] *See Card Complaint*, 2018 WL 4183714, at *9.

[80] DEL. CODE ANN. tit. 6, § 1203(b)(2).

[81] *Card Complaint*, 2018 WL 4183714, at *9.

determination of the evidentiary and legal merits of the State's false claims counts at the appropriate time by judge or jury.

At bottom, even were the Court to allow the Defendants' proposed CMO amendment to add their fourth suggested issue to Phase One, they could never reach their end goal of summary judgment or dismissal on their creative, yet illusory, § 1203(b)(2)-deficient-investigation claim. Yet, through that allowance the Court would sanction the mischief of an unnecessary expedition through the Department of Justice's pre-intervention investigation and its internal deliberations and communications that occasioned its intervention.

Because the proposed CMO amendment is for the sole purpose of pursuing the Defendants' futile scope-of-investigation claim, their Motion to Amend the Case Management Order is **DENIED**.

**IT IS SO ORDERED.**

_____
Paul R. Wallace, Judge

cc: All Counsel via File and Serve